## COMMONWEALTH vs. BETSEY HUNT.

Where a husband obtained a divorce from the bond of matrimony, for the cause of utter and wilful desertion by the wife, for the term of five years consecutively. without his consent; and the wife afterwards went into another state, and was there married to another man, with whom she returned to this state and here lived and cohabited; it was held, that if the wife was guilty of any offence under the Rev. Sts. c. 130, she was indictable under the second section for unlawful cohabitation, and not under the fourth section for lewd and lascivious behavior.

THE defendant was indicted in the court of common pleas, and there tried before *Hopkinson*, J., for lewd and lascivious cohabitation with Oliver Davis, Jr., at Prescott, in the county of Hampshire, between the 1st of March, 1848, and the 1st of February following; the defendant being then the wife of Warren Hunt, and not married to Oliver Davis, Jr.

At the trial, a copy was introduced in evidence, on behalf of the commonwealth, of a record of a decree of divorce from the bond of matrimony between Warren Hunt and the defendant, obtained by Hunt at the April term of this court.

1847, upon the default of the defendant, for the alleged reason, that the defendant had wilfully and utterly deserted him for the term of five years consecutively without his consent.

The defendant offered evidence, which was rejected, to prove that she was married to Oliver Davis, Jr., on the 9th of February, 1848, at Vernon, Windham county, Vermont, according to the laws of that state.

The jury were instructed, that the record of the decree of divorce was conclusive evidence, that the defendant was the guilty party; that she was therefore precluded by the act of 1841, c. 83, from contracting a valid marriage, within this commonwealth, during the life of Warren Hunt; and that the alleged marriage in Vermont would be void in this state.

The defendant, being convicted, alleged exceptions.

*J. W. Boyden*, for the defendant.

*Clifford*, attorney general, for the commonwealth.

DEWEY, J.   If the facts in this case afford ground for any indictment under the Rev. Sts. c. 130, it would be more properly an indictment upon the second section, for unlawfully cohabiting within the state, with Davis, as husband and wife, the defendant having a former husband living, and not coming within the exception of the third section, as a person " not the guilty cause of such divorce."   The offence of lewd and lascivious behavior, made punishable by the fourth section, does not, we think, embrace a case like the present. *Commonwealth* v. *Putnam*, 1 Pick. 136.   Had the defendant been indicted under the second section, the question would then have arisen, as to the effect of the marriage in Vermont; and it would have been necessary to consider more particularly the present state of our law in relation to such marriages.

That a marriage, valid by the laws of the place where it is celebrated, is valid in this state, on grounds of public policy, though the parties went into another state merely to evade the laws of the state, is established in the cases of *Medway* v. *Needham*, 16 Mass. 157; *West Cambridge* v. *Lexington*, 1 Pick. 506; *Putnam* v. *Putnam*, 8 Pick. 433; *Sutton* v *Warren*, 10 Met. 451.   The provision of the Rev. Sts. c. 75, § 6,

seems to have been intended to meet this class of cases, that is, of individuals fraudulently attempting to evade the law of Massachusetts, so far as respects persons divorced for the cause of adultery, and to declare such marriages by the guilty party to be void in this commonwealth.

But that section did not originally embrace the case of a party divorced by reason of five years' utter and wilful desertion. Such a divorce was not authorized until the passing of the statute of 1838, *c.* 126; in which, as to future marriages by either of the parties, no disqualifying clause was added. By the statute of 1841, *c.* 83, it was provided, that the guilty party should be debarred from contracting marriage during the lifetime of the innocent party, and that if the guilty party should contract such marriage, the same should be void, and such party should be adjudged guilty of polygamy. But this statute only applies, in terms, to marriages within the commonwealth; and in reference to such, is full and explicit, making them void. It is only by implication, that we can extend these statute provisions to cases like the present, where the guilty party, who has been divorced, has subsequently gone from this commonwealth into a neighboring state, and been there married, and has then returned into this commonwealth, and here cohabited with the person to whom he or she has been thus married in another state. The adjudicated cases, above cited, would seem fully to sustain the validity of the marriage in Vermont, if it had taken place prior to the enactment of the Rev. Sts. *c.* 75, § 6; and the only question upon this point, therefore, arises upon the construction of that statute, taken in connection with the statute of 1841, *c.* 83. Upon this point, as the case does not require it, we express no opinion further than the remarks already made.      *Exceptions sustained.*