INHABITANTS OF BOWDOINHAM *vs.* INHABITANTS OF PHIPPSBURG.

*Proceedings under R. S., c. 143, relative to support of insane paupers.*

A complaint, made by a relative of an insane person under R. S., c. 143, § 12, is sufficient, if such person be designated as the wife of the complainant without giving her name.

An omission to object to the admissibility of the record of the adjudication of the selectmen upon such complaint, on the ground that it was not attested by the town clerk, is a waiver of the right to claim in argument that the record is not what the law requires, because of the want of such attestation.

When in an action between two towns, arising under R. S., c. 143, §§ 12 and 20, the supplies were continuous, and the defendant town has not paid any of the expenses of support incurred and paid by the plaintiff town, a notice, or notices, by the town furnishing and paying for the supplies, to the town chargeable, is sufficient to authorize a recovery for a period of time commencing three months before the first notice was given, and ending at the date of the writ, provided the suit is commenced within two years from the time when the cause of action first accrued.

Bowdoinham v. Phippsburg.

The verdict of the jury, finding the marriage of the pauper, cannot be set aside as against law or evidence where (as in this case) the evidence shows that the marriage ceremony was duly performed by an ordained minister of the gospel, accustomed to solemnize marriages ; that the intentions of marriage were published in the town where the reputed husband resided at the time of the alleged marriage, and the parties subsequently lived together several years, as and claiming to be, husband and wife.

When a pauper's settlement is shown to have once been in the defendant town, the burden is upon the defence to prove that another was subsequently gained, if its liability is sought to be avoided on that ground.

On exceptions.

Assumpsit to recover sums paid at various times between June 24, 1871, and November 9, 1872, the date of the writ, for the support of Rebecca J. Stackpole, wife of Joshua B. Stackpole, in the insane hospital. The first notice given by the overseers of the poor of Bowdoinham to those of Phippsburg was dated June 9, 1871, when the first bill from the hospital was received by the former. As other bills for support were, from time to time, sent to Bowdoinham, by whose municipal officers the commitment to the hospital was made, new notices were sent to the overseers of Phippsburg.

Mrs. Stackpole was visiting in Bowdoinham when she became so insane that, upon the twentieth day of April, 1870, her husband made complaint to the selectmen of Bowdoinham, agreeably to the provisions of R. S., c. 143, § 12, and asked that she be committed to the insane hospital, which was done after hearing the testimony, upon the same day. The complaint read thus : "To the selectmen of Bowdoinham. The undersigned complains and says that he came into this town with his wife to visit her sister, and that she is insane, and ought to be sent to the insane hospital.

JOSHUA B. STACKPOLE."

The certificate of the proceedings for commitment was not authenticated by the town clerk. The judge was asked to instruct the jury that the application was not sufficiently definite to justify proceeding upon it because it did not contain the name of the person alleged to be insane ; and that there was no proof of proper

proceedings because they lack the verification of the town clerk; both of which requests were declined.

The defendants contended that none of the notices sent them by the plaintiffs were sufficient, but the judge ruled otherwise.

In the preliminary proceedings and commitment the insane person was called Rebecca C. Stackpole, except that in one place in the commitment the initial of the middle name was J. The declaration was for the support of Rebecca J. Stackpole. It was claimed that her settlement was derived from her husband, wherever his might be. The record of the intention of marriage was between Joshua B. Stackpole and Rebecca C. Preble. The defence contended that there was no proof of identity, but this question was left to the jury. In the notices she was uniformly called Rebecca J. Stackpole.

The defendants claimed that the plaintiffs could not recover because there was no certificate of the examiners that the insane person and her relatives were not of sufficient ability to support her; or, at any rate, a dollar a week should be deducted from the board paid; but the court did not so hold. For eight or ten years Mr. Stackpole and his wife lived in Boston, Mass.

The defendants requested the judge to instruct the jury that the burden was upon the plaintiffs throughout; but the court ruled that if the plaintiffs had first satisfied them that Joshua B. Stackpole once had his settlement in Phippsburg, the burden was upon that town to show he had subsequently gained one elsewhere. The judge then remarked that "the question of the burden of proof becomes important only when the testimony is so nearly balanced upon a point that the jury are unable to say that their minds incline either way with relation to it. Whichever way the jury finds the proof inclines their minds, they accept that view of it. If the testimony is equally balanced, so that they are unable to say that their minds incline to either side of the case, then the party fails upon whom the burden of proof rests, as he does if the proof inclines against him." To this the defendants excepted. The defence argued that, under the circumstances, it would be a

Bowdoinham v. Phippsburg.

hardship and against natural justice, to have the support of the woman cast upon Phippsburg; and that, inasmuch as the plaintiffs were insisting upon a strict statutory right, the jury ought to hold them to clear proof of all the facts, and give them the benefit of no doubtful presumption; thereupon, the judge said: "We are to look to the law to see what constitutes a legal settlement, and to find out how it is acquired. It is all a matter of statute provision. You have heard something on both sides, about the hardship of this statute. You have nothing to do with that at all. Natural justice has nothing to do with the case. It is a matter purely of statute right, statute liability." To this instruction the defendant excepted. The verdict was for the full amount expended by the plaintiffs and interest.

*W. Gilbert* and *Francis Adams*, for the defendants.

The first notice that anything had been paid by Bowdoinham was February 27, 1872. Those prior to that simply said that bills had been received from the hospital—not that they had been paid. The expenses are not incurred by the town till they are paid; hence all notices prior to payment are nugatory. *Eastport* v. *Belfast*, 40 Maine, 262; *Bangor* v. *Fairfield*, 46 Maine, 558; *Verona* v. *Penobscot*, 56 Maine, 11; *West Gardiner* v. *Hartland*, 62 Maine, 246. The statement as to the burden of proof was wrong. *Wilmington* v. *Burlington*, 4 Pick., 174.

When residence and domicil within the State ceased, the pauper settlement ceased. R. S., c. 24, §§ 1 and 2.

*Tallman & Larrabee* and *E. J. Millay*, for the plaintiffs.

DICKERSON, J. We do not think that the objection to the complaint and the warrant of commitment is well taken. The statute does not prescribe the form of the complaint. That should state that the person for whom relief is asked is insane, and give the name of such person or such information as readily shows who is intended. The designation of the insane person, as the wife of the complainant, is as intelligible for this purpose, as though her name

had been given. The certificate of commitment contains all the requisites of the statute which make it sufficient evidence to charge the plaintiffs in the first instance.

No objection appears to have been made to the introduction of the record of the adjudication of the selectmen upon the complaint. The defendants having waived this objection were not in a situation to request the presiding justice to rule that the record was invalid for want of the attestation of the town clerk. If the objection had been seasonably interposed it might, perhaps, have been obviated by the proper authentication. The presiding justice properly declined to give the requested instruction upon this point.

The objections to the notices relate to an alleged misnomer of the pauper, and the unseasonableness of some of them to cover certain amounts of the expenses incurred and paid. The first objection is removed by the presiding justice in submitting the question of identity to the jury, and the second by the other circumstances in the case. The supplies were furnished continuously, and the defendants had paid no part of the expenses incurred when the plaintiffs commenced their suit. In such cases it is not necessary that a new notice be given when each payment is made to the hospital. It is sufficient if one of the legal notices, or, as in this case, a number of them, covers the time when all the sums were paid, including the sums paid three months prior to the first notice, and all sums afterwards accruing and paid, unless barred by the statute of limitations. *Jay* v. *Carthage*, 48 Maine, 357; *Veazie* v. *Howland*, 53 Maine, 39.

The instructions given to the jury in regard to the burden of proof were correct. The settlement of the wife follows that of her husband, whether he gained his settlement in his own right, or by derivation from his father. A settlement once acquired continues until a new one is gained. Where the settlement of a pauper is proved to be in a town the burden is upon such town to show that the pauper has gained another settlement, if it would avoid liability for his support. *Monson* v. *Fairfield*, 55 Maine, 119.

The objection to the validity of the marriage of the pauper to Joshua B. Stackpole cannot be sustained. The presiding justice left the question of the identity of the parties to the jury, and there is ample evidence to sustain their finding the fact of the marriage, nor is their verdict in this respect against law as the authorities clearly show. *Hiram* v. *Pierce*, 45 Maine, 367; *Taylor* v. *Robinson*, 29 Maine, 323; *Milford* v. *Worcester*, 7 Mass., 48; *Newburyport* v. *Boothbay*, 9 Mass., 414.

There is nothing in the other points made in defence that would justify us in setting aside the verdict. *Exceptions overruled.*

APPLETON, C. J., BARROWS, DANFORTH and VIRGIN, JJ., concurred.