Bangs and Lincoln, of counsel for the defendants, were stopped by the Court, whose opinion was afterwards delivered by
Parsons, C. J.
This action is assumpsit, for the maintenance of Stephen Temple, Bhoda Temple, said to be his wife, and their six children, who, as the plaintiffs allege, are paupers, having their settlement in Worcester. The cause has been tried upon the general issue, and a verdict found for the plaintiffs, as to the maintenance of Stephen Temple; but against them, as to the maintenance of Rhoda and the six children. The plaintiffs move for a new trial *44 upon the judge’s report, in which it is not stated whether the objection is to the judge’s direction, or to the verdict as against evidence.
From the report it appears to have been admitted, by the parties, that Stephen Temple’s settlement was in Worcester, and that the jury did right in charging that town with his support. If Rhoda was his lawful wife, the six children would be legitimate, and she, with her children, will have a derivative settlement in Worcester, with her: husband and their father. The legality of the marriage between Stephen and Rhoda was, therefore, the only question between the parties. If this marriage is established, then the verdict must be set aside, and a new trial granted, that Milford may recover the money expended in maintaining the wife and the six children ; otherwise the verdict is to stand.
(After stating the facts reported hy the judge, his honor proceeded.)
[ * 52 ] *On this evidence, the judge left it to the jury to decide, whether or not these proceedings had the sanction of the justice, as a magistrate; if not, to find against the marriage, if otherwise, to find in favor of it. As the cause was thus left to the jury, there is no ground to declare the verdict to be against evidence. Although some of the witnesses testified that the proceedings between Stephen and Rhoda were directed and encouraged by the justice, yet he, on his oath, denied it; and the jury were the proper judges of the credibility of the witnesses, and of the weight of their evidence. There was evidence on both sides, and they decided against the marriage. If the direction of the judge was right, there seems to be no reason to impeach the verdict. He directed the jury to find against the marriage, if the proceedings in the presence of the justice had not in any degree his official sanction. And the propriety of this direction is questioned.
Marriage is unquestionably a civil contract, founded in the social nature of man, and intended to regulate, chasten, and refine, the intercourse between the sexes; and to multiply, preserve, and improve the species. It is an engagement, by which a single man and a single woman, of sufficient discretion, take each other for husband and wife. From the nature of the contract, it exists during the lives of the two parties, unless dissolved for causes which defeat the object of marriage, or from relations imposing duties repugnant to matrimonial rights and obligations.
Marriage, being essential to the peace and harmony, and to the virtues and improvements of civil society, it has been, in all well-regulated governments, among the first attentions of the civil magistrate to regulate marriages; by defining the characters and rela *45 lions of parties who may marry, so as to prevent a conflict of duties, and to preserve the purity of families; by describing the solemnities, by which the contract shall be executed, so as to guard against fraud, surprise, and seduction; by annexing civil rights to the parties and their issue, to encourage marriage, and to * discountenance wanton and lascivious cohabitation, [ * 53 J which, if not checked, is followed by prostration of morals, and a dissolution of manners; and by declaring the causes, and the judicature for rescinding the contract, when the conduct of either party and the interest of the state authorize a dissolution. A marriage contracted by parties authorized by law to contract, and solemnized in the manner prescribed by law, is a lawful marriage , and to no other marriage are incident the rights and privileges secured to husband and wife, and to the issue of the marriage
The inquiry, therefore, in this case is, whether the mutual engagement of Stephen Temple and Rhoda Essling, made at the tavern in Upton, under the circumstances there existing, was a lawful marriage. Let us now examine the law.
When our ancestors left England, and ever since, it is well known that a lawful marriage there must be celebrated before a clergyman in orders, and that all questions of marriage, divorce, and alimony, regularly belong to the ordinary. When our ancestors first settled here, smarting under the arbitrary censures of the ecclesiastical courts, they were not disposed to invest their own clergy with any civil powers whatever; but tó leave them wholly to the exercise of their pastoral functions. With this impression, in 1646, by an ordinance passed for the due solemnization of marriages, no person is authorized to join together in marriage any persons, but a magis trate, or some other person to be appointed in such places where no magistrate was near. And all persons were forbidden to join themselves in marriage but before some magistrate, or other person authorized as aforesaid. Neither was the magistrate authorized to permit the parties to contract marriage in his presence, unless the intention of marriage had been previously published.
Thus stood the law, until the repeal of the first charter. Under the provincial charter, new and different regulations, for the solemnizing of marriages, were made; which were in force in ] 784, and by which the case before us must be governed.
* By the provincial statute of 4 Will. & Mar. c. 10, [ * 54 ] every justice of the peace within his county, and every settled minister in any town, are authorized to solemnize marriages between persons who may lawfully intermarry, and who have the consent of those, under whose immediate government they are, producing a certificate of the publication of the intention of mar *46 riage. This statute containing no negative words, it was afterwards enacted, by the statute of 7 Will. 3, c. 6, that no person, other than a justice of the peace, and that within his county only, or ordained minister, and that only in the town where he was settled, should join any persons in marriage; nor any, unless one or both of the parties were inhabitants, or residents, in such a county or town respectively; nor without certificate of publishment; nor without evident signification that the parents, or guardians, were knowing of, and consenting to, such marriage, on the penalty of forfeiting fifty pounds to the county. The authority of an ordained minister, to solemnize marriages, was afterwards, by the statute of 3 G. 3, c. 4, and 13 G. 3, c. 6, enlarged in some special cases, which it is not necessary now to mention. These statutes remained in force until January, 1787; when the statute of 1786, c. 3, came into operation.
No form of words is established for the solemnization of a marriage. The usage is, for the justice or minister to require of the parties respectively an assent to a mutual agreement to take each other for husband and wife ; after which he pronounces them to be husband and wife. But the statute would be substantially conformed to, if the parties were to make the mutual engagement in the presence of the justice, or minister, with his assent, he undertaking to act on that occasion in his official character. But without such assent and undertaking of the justice or minister, notwithstanding their personal presence, the marriage, I am well satisfied, will not be solemnized pursuant to, nor be a lawful marriage within, the statute.
When a justice, or minister, shall solemnize a marriage [ * 55 ] * between parties, who may lawfully marry, although without publication of the bans of marriage, and without the consent of the parents or guardians, such marriage would unquestionably be lawful, although the officer would incur the penalty of fifty pounds for a breach of his duty. If, therefore, a mutual engagement of marriage made by the parties, in the presence of a justice or minister, he not assenting to act in his official character on that occasion, would be a solemnization of the marriage by him, it would be equally so whether the intention of marriage had or had not been published; and if it had not, he might incur the penalty of fifty pounds, where he had been guilty of no breach of official duty. This consequence is not to be admitted; and the necessary inference is, that such marriage engagement, so made by the parties, in the presence of a justice or minister, not consenting to act officially on the occasion, is not a lawful marriage pursuant to the statute.
*47 But it has been argued that this marriage, although not solemnized pursuant to the statute, is yet a lawful marriage, had between parties competent to contract marriage, and not declared void by any statute.
This ground, for supporting the marriage, deserves consideration; as, if it be tenable, the consequences are very extensive. Where the laws of any state have prescribed no regulations for the celebration of marriages, a mutual engagement to intermarry, by parties competent to make such contract, would, in a moral view, be a good marriage, and would impugn no law of the state. But when civil government has established regulations for the due celebration of marriages, it is the duty, as well as the interest, of all the citizens to conform to such regulations. A deviation from them may tend to introduce fraud and surprise in the contract; or by a celebration without witnesses, the vilest seduction may be practised under the pretext of matrimony. When, therefore, the statute enacts that no person but a justice, or a minister, shall solemnize a marriage, and that only in certain cases, the parties are themselves prohibited from * solemnizing their own marriages by any [ * 56 ] form of engagement, or in the presence of any witnesses whatever.
If this be not a reasonable inference, fruitless are all the precautions of the legislature. In vain do the laws require a previous publication of the bans, or the assent of the parents or guardians of young minors, or prohibit a justice or minister from solemnizing the marriage without these pre-requisites. A young and inconsiderate couple may, at a tavern or elsewhere, with or without the presence of witnesses, rush into matrimony, distress their friends, and destroy their own future prospects in life.
As the notoriety of marriages is of importance to the people, in furnishing an easy method of proving descents, the statute of 1786, c. 3, requires a certificate of a justice, or minister, of every marriage by him solemnized, to be entered on a public record, which cannot be impeached unless by evidence of fraud. Marriages otherwise solemnized cannot, therefore, be recorded, and cannot be presumed to be marriages recognized by law.
It has been truly observed, by the counsel for the plaintiffs, that a marriage engagement of this kind is not declared void by any statute. But we cannot thence conclude that it is recognized as valid, unless we render in a great measure nugatory all the statute regulations on this subject.
It may be objected to these principles, that if they are correct, a marriage among Quakers, agreeably to the rules of their society, is void. I know not that the conclusion would not be just. I know *48 that such was the opinion of lawyers before -the revolution ; and so general was this impression, that to guard those people from consequences so mischievous, in the eighth section of the revising statute of 1786, 3, all such marriages before had were confirmed, and such marriages authorized in future.
Marriages may be considered as void or valid, with respect eithet to civil rights incident to marriages, or to penal consequences to the parties, where marriages are questioned. Whatever [ * 57 ] foundation for the distinction .there may be, * when the parties might have lawfully intermarried, there can be none where the parties are prohibited from marrying. This last case comprehends, by our laws, incestuous marriages, (5) marriages within the age of consent, (6) when either of. the parties has a husband or wife living, (7) and marriages between a white person and an Indian, negro, or mulatto. (8)
Marriages between parties, who might lawfully have intermarried, deserve a further consideration. No person can lawfully solemnize such marriages, but a justice of the peace, or an ordained- minister. And a record of a marriage so solemnized, by either of those offi cers, founded on a certificate duly made, is legal evidence of the marriage, and no inquiry is further made as to the publication of bans, the assent of parents or guardians, or the inhabitancy of the parties. When, therefore, the marriage appears to have been celebrated by a competent officer, as a justice or a minister, the marriage is deemed lawful, although the officer, for his irregularity,, may have incurred the penalty of fifty pounds. But a, marriage, merely the effect of a mutual engagement between the parties, or solemnized by any one not a justice of the.peace or an ordained- minister, is not a legal marriage, entitled to the incidents of a marriage duly solemnized. The woman, when a widow, cannot claim dower, nor the issue seisin by descent.
Whether cohabitation, after such a pretended marriage, will subject either of the parties to punishment, as guilty of fornication, may depend on circumstances. If either of the parties were circumvented, and verily supposed the marriage legal, perhaps such party would be protected from punishment, on the general principle, that to constitute guilt, the mind must appear to be guilty. But every young woman of honor ought to insist on a marriage solemnized by a legal officer, and to shun the man who prates about marriage condemned by human laws, as good in the sight of Heaven. This cant, *49 she may be assured, is a pretext for seduction; and, if not con temned, will lead to dishonor and misery.
* Upon the whole, it is the opinion of the Court, that [ * 58 J the mutual engagement of the parties, in this case, to take each other for husband and wife, in the room where a justice was present, he not assenting, but refusing to solemnize the marriage, is not a lawful marriage, so that the woman, or her issue by Stephen Temple, could acquire a derivative settlement from him in Worcester; and the verdict must stand.

Judgment on the verdict.

 Stat. 7, Will. 3, 6. —1785, c. 69

 Stat. 1784, c. 40, § 5.

 Stat. 1785, c. 69.

 Stat. 4, Ann. c. 6. —1786, c. 3.