Parker, C. J.
By the law in force here when the marriage in question took place, that marriage could have had no legal effect, if it had been celebrated within this then province, because expressly prohibited by law. And although not by the provincial act declared to be void, yet it was necessarily so, in order to give effect to the law (3).
But the marriage was solemnized in Rhode Island, where it was not unlawful. Now, it is a principle adopted for general convenience and security, that a marriage, which is good according to the laws of the country where it is entered into, shall be valid in any other country. And this principle is considered so essential, that even when it appears that the parties went into another state to evade the laws of their own country, the marriage in the foreign state shall nevertheless ,be valid in the country where the parties live. This, it seems, has been doubted in England [see the case of Robinson vs. Bland]: but it was settled in the Court of Delegates, in a question upon a Scotch marriage (4). It was thought necessary to adopt this principle, to avoid the great inconvenience and cruelty of bastardizing the issue of such marriages.
The law now in force in this state not only prohibits the marriage of negroes and mulattoes with white persons, but expressly declares such marriages to be void (5). But they are only void if contracted within this state, in violation of its laws. If the marriage takes place in a state whose laws allow it, the marriage is certainly good there ; and it would produce greater inconveniences than those at tempted to be guarded against, if a contract of this solemn nature. *137 valid in a neighboring state, could be dissolved at the will of either of the parties, by stepping over the line of a state, which might prohibit such marriages.
The celebrated jurist and civilian Huberus strongly contests this doctrine, as may be seen in the passage cited * by [ * 160 ] Hargrave in the note referred to by the counsel for the defendants; and he puts strong cases, to show the grounds of his opinion. But his objections have been overcome in England, by the consideration of the extreme inconveniences and cruelty of applying the principle he contends for.
It certainly may be doubted, whether the provincial legislature in- . tended to make void such marriages; for although it is a legal in ference from a declared inability to contract; yet that inference might not, at that time, have been perfectly understood. Marriages without certain formalities required by the law, although illegally contracted, are yet valid; and the difference between a prohibition, which relates only to the forms, and that which creates an inability to contract, may not have been taken into view
According to the case settled in England by the ecclesiastical court, and recognized by the courts of common law, the marriage is to be held valid or otherwise according to the laws of the place where it is contracted; although the parties went to the foreign country with an intention to evade the laws of their own. This doctrine is repugnant to the general principles- of law relating to contracts ; for a fraudulent evasion of the laws of the country, where the parties have their domicil, could not, except in the contract of marriage, be protected under the general principle. Thus parties intending to make a usurious bargain, cannot give validity to a contract, in which more than the lawful interest of their country is secured, by passing into another territory, where there may be no restriction of interest, or where it is established at a higher rate, and there executing a contract before agreed upon.
The exception in favor of marriages so contracted must be founded on principles of policy, with a view to prevent the disastrous consequences to the issue of such marriages, as well as to avoid the public mischief, which * would result c * 161 ] from tl 3 loose state, in which people so situated would live.
Motives of policy may likewise be admitted into the consideration of the extent to which this exception is to be allowed to operate. If without any restriction, then it might be that incestuous marriages might be contracted between citizens of a state where they were held unlawful and void, in countries where they were not prohibited; and the parties return to live in defiance of the religion and laws o; *138 their own country. But it is not to be inferred from a toleration of marriages, which are prohibited merely on account of political expediency, that others, which would tend to outrage the principles and feelings of all civilized nations, would be countenanced (6).

Judgment on the verdict.

 7 Mass. Rep. 48, Miford vs. Worcester.

 Bull. N. P. 114.

 Stat. 1786 c. 3, § 7.

 [Putnam vs. Putnam, 8 Pick. 433. —West Cambridge vs. Lexington, 1 Pick. 506. —Mr. Justice Story's Comm. on Conf. Laws, 116, 117, and the cases there cited.—Ed.]