*In re* PETITION OF HABEAS CORPUS ON BEHALF OF HENRY C. CHACE.

PROVIDENCE—JULY 23, 1904.

PRESENT: Tillinghast, Douglas, and Blodgett, JJ.

(1) *Marriage. Conflict of Laws. Habeas Corpus. Guardian and Ward.*

The capacity to marry depends upon the law of the place where the marriage is celebrated, and not on that of the domicile of the parties, and will be recognized as valid in the domicile unless it is against the public policy of that jurisdiction.

*Quære* whether the marriage performed in this State of a person under guardianship, without the written consent of the guardian, as required by Pub. Laws cap. 549, § 11, would be void.

*Quære,* whether Gen. Laws cap. 196, § 16, providing that all contracts made by a ward shall be void, includes the contract of marriage.

(2) *Habeas Corpus. Guardian and Ward.*

Although a guardian may have been appointed over the person and property of a ward, yet, in the absence of circumstances requiring the control of the person of the ward for the assertion of his rights, the wife is entitled to the society of her husband free from the restraint of the guardian.

Whether the marriage of a ward terminates the guardianship the court does not decide.

May 23, 1899, A. was appointed guardian of the person and estate of B., a person of full age, under Gen. Laws cap. 196, § 7, on the ground that from want of discretion in managing his estate he was likely to bring himself to want. November 20, 1902, B was married, in Massachusetts, to C., without the written consent of his guardian as required by Pub. Laws cap. 549, § 11, both B. and C. being domiciled in this State. Thereafter A. removed B. from his home. C. thereupon brought *habeas corpus* against A.:—

*Held,* that the marriage was valid in the place where it was performed and would be recognized as valid in this State, and that C. was entitled to the relief sought.

HABEAS CORPUS, on facts set forth in opinion. Heard on petition for writ, and granted.

TILLINGHAST, J. This is a petition for a writ of *habeas corpus*, brought by Elizabeth E. Chace in behalf of her husband, Henry C. Chace.

The material facts in the case are these: On the 23d day of May, 1899, Andrew D. Wilson was appointed guardian of the person and estate of said Henry C. Chace, a person of full age, under the provisions of Gen. Laws cap. 196, § 7, on the ground that from want of discretion in managing his estate he was likely to bring himself to want. Subsequently, on the 20th of November, 1902, Mr. Chace married his present wife. The marriage was solemnized in Massachusetts, although both of the parties were domiciled in Rhode Island, and it was entered into by Mr. Chace without obtaining the written consent of his guardian, which is made one of the requisites for obtaining a marriage license in this State under Pub. Laws, R. I. 1898–99, cap. 549, § 11.

Soon after the marriage Mr. and Mrs. Chace returned to this State and lived together as husband and wife for some months, until some time last August, when the guardian aforesaid, removed Mr. Chace from his home, against his protest and that of the petitioner. The petitioner avers that the respondent guardian thereupon imprisoned Mr. Chace, and is now unlawfully restraining him of his liberty, at No. 9 Lemon street, Providence; that he is deprived of the companionship, assistance, and care of his wife, which he desires; that he is not permitted to have social intercourse with her save in the presence of his guardian, and that he is being treated in a manner inconsistent with the relation of guardian and ward.

In determining whether the petitioner is entitled to the relief she prays for, the first question calling for decision is whether she was lawfully married to Mr. Chace; for, if not, she shows no standing to petition in his behalf as his wife. It is argued by the counsel for the guardian that the marriage is invalid, and that the petitioner never became the wife of Mr. Chace. The reasons advanced are (1) that by our statute, cited

above, a ward is rendered unable to obtain a marriage license without the consent of his guardian, and that no such consent was given by the respondent; (2) that by the provisions of Gen. Laws cap. 196, § 16, "all contracts, bargains, and conveyances made by any person under guardianship shall be utterly void;" (3) that these provisions show that it is the policy of our law to deny any validity to any kind of a contract which a ward attempts to make, and that, therefore, although the marriage took place in Massachusetts, and may have fulfilled the requirements of Massachusetts law, it will not be recognized in this State.

We do not think that any of these arguments are sound. As to the first two, we think it is clear that the statutes relied upon can have no direct application to this marriage, for it was celebrated in another State and under the provisions of other laws.

(1) The third argument, however, requires more consideration. It is said by counsel for the guardian that, "marriage, in evasion of the laws of the domicile, and contrary to the public policy or laws of the domicile, will not be recognized as valid."

But it must be noticed, in the first place, that it nowhere appears, either in the pleadings or proof, that the marriage involved here was entered into in evasion of the laws of the domicile and contrary to the public policy thereof. For aught that appears, the parties may have entered into this contract of marriage in the most perfect good faith, and without any intention of evading the laws of Rhode Island. And as is said by Mr. Bishop in the first volume of his work on "Marriage, Divorce, and Separation," §§ 77, 836: "Each particular instance of what is meant for marriage, has the aid of all the presumptions, both of law and fact, and equally whether the marriage was domestic or foreign." Furthermore, it is not clear that, even if the marriage had been solemnized in this State, it would have been void. Pub. Laws R. I. 1898–99, cap. 549, § 11, supra, merely provides that no marriage license shall issue to a person under guardianship without the written consent of the guardian; but it by no means necessarily follows that a marriage procured without first obtain-

ing such license would be void, although the official or other person who performed the ceremony might be liable to punishment under section 19 of the same chapter. See *Parton* v. *Hervey*, 1 Gray (Mass.), 119, 121. For while our statutes prescribe certain formalities and requirements in connection with the entering into the marriage relation, it is to be carefully borne in mind that they nowhere declare that the failure to observe any or all of said formalities or requirements shall have the effect to render a marriage void.

Again, although Gen. Laws cap. 196, § 16, provides that all contracts made by a ward shall be void, it is at least very questionable whether the legislature intended that section to refer to the contract of marriage. Indeed, the words of the section, referring to bargains and conveyances, would clearly seem to show that it was only intended to affect contracts relating to property. Certainly the provision is not of universal application, for under Pub. Laws, *supra*, there must be an implied exception in the case of a marriage contract, to which the guardian consents in writing. Upon the questions of interpretation thus raised, however, we refrain from expressing any opinion, as we think that, even assuming that the marriage would have been void in this State, yet as, so far as appears, it was lawfully celebrated in Massachusetts, it must be considered valid here. We are aware that the authorities are not entirely uniform upon this point, now for the first time presented in Rhode Island; but the general principle, as we gather it from text-writers and decisions, both English and American, is that the capacity or incapacity to marry depends on the law of the place where the marriage is celebrated, and not on that of the domicile of the parties. Sto. Conf. Law, 8 ed. § 89; see *ib.* §§ 123a, 123b, 113, 121; Bish. Mar. Div. & Sep. vol. 1, § 843, and cases cited; *Putnam* v. *Putnam*, 8 Pick. (Mass.) 433; *Inhabitants of West Cambridge* v. *Inhabitants of Lexington*, 1 Pick. (Mass.) 506; *Van Voorhis* v. *Brintnall*, 86 N. Y. 18.

In *Medway* v. *Needham*, 16 Mass. 157, a statute made a marriage between a negro or mulatto and a white person void. A couple, one of whom was a mulatto and the other white, in order to evade the statute, came into Rhode Island, where such

connections were allowed, were there married, and immediately returned. And the marriage, being good in Rhode Island, was held to be good in Massachusetts. The reasoning upon which these cases proceed is well stated by Sir Edward Simpson in *Scrimshire* v. *Scrimshire*, 2 Hagg. Cons. 395. He says, on page 417: "All nations allow marriage contracts; they are '*juris gentium*,' and the subjects of all nations are equally concerned in them; and from the infinite mischief and confusion that must necessarily arise to the subjects of all nations with respect to legitimacy, successions, and other rights, if the respective laws of different countries were only to be observed, as to marriages contracted by the subjects of those countries abroad, all nations have consented, or must be presumed to consent, for the common benefit and advantage, that such marriages should be good or not, according to the laws of the country where they are made. . . . By observing this law no inconvenience can arise; but infinite mischief will ensue if it is not."

The counsel for the guardian, however, cites several cases which, at first sight, seem to support the position that marriage in evasion of the laws of the domicile is invalid. Thus, in *Estate of Stull*, 183 Pa. St. 625, and *Pennegar and Haney* v. *State*, 87 Tenn. 244, a statute forbade any person from whom a divorce was obtained on the ground of adultery to remarry. In both cases a party forbidden to marry went into another State and remarried. The second marriage, in both cases, was held invalid in the State where the party was domiciled. In *Dupre* v. *Boulard*, 10 La. Ann. 411, a statute forbade the intermarriage of blacks and whites, and it was held that any such marriage, although valid where performed, would not be recognized in Louisiana. To the same effect are *State* v. *Kennedy*, 76 N. C. 251, and *Kinney* v. *Com.*, 30 Gratt. (Va.) 858.

And in *Brook* v. *Brook*, 9 H. L. Cas. *193, where a statute declared that a marriage with a deceased wife's sister should be invalid, it was held that such a marriage entered into between British subjects in a country where the marriage was not forbidden was absolutely void in England.

We consider these cases inconclusive. Most of them, if not

all, fall within a well-recognized exception to the general rule laid down above, namely, that if a marriage is odious by the common consent of nations, or if its influence is thought dangerous to the fabric of society, so that it is strongly against the public policy of the jurisdiction, it will not be recognized there, even though valid where it was solemnized. Thus a polygamous marriage, although valid and binding in the country where it was contracted, would probably be denied validity in all countries where such unions are prohibited. See *In re Bethell*, 38 Ch. D. 220. Probably the rule would be the same in case of an incestuous marriage, although valid in the place where contracted. See Bishop, *supra*, § 858, *et seq.; Com.* v. *Lane*, 113 Mass. 458, 463.

The cases cited from Louisiana, North Carolina, and Virginia may be explained, then, on the ground that the tendency of such unions in those States was considered destructive of society; and their apparent conflict with *Medway* v. *Needham* rests, not upon any conflict of opinion regarding the general principle governing foreign marriages, but only upon the different conceptions of the courts regarding the importance of the public policy forbidding such marriages. The first two cases cited by counsel for the respondent guardian are harder to distinguish, although we think that here again the difference in the result is attributable to the same difference in the conception of the public policy regarding such marriages. But if the cases really are in conflict we believe that the current of authority is in favor of the principle already enunciated. It is true that in the important case of *Brook* v. *Brook, supra,* decided by the House of Lords, a contrary position was taken, and the Massachusetts cases were expressly disapproved. That case, however, although of great weight, has been considerably criticised, and is believed to be contrary to the weight of American authority. For a learned criticism of the case see the opinion of Gray, C. J., in *Com.* v. *Lane, supra,* p. 467, *et seq.;* see also Bishop, *supra,* § 827.

The case of *Andrews* v. *Andrews,* 188 U. S. 14, has no bearing upon the question at issue. In that case the only question was whether the court of Massachusetts constitutionally could

refuse to recognize a divorce granted by the court of South Dakota, in view of a Massachusetts statute providing that a divorce obtained in fraud of the laws of the domicile should be invalid; and it was held that as the divorce was granted to one who had never obtained a *bona fide* domicile, the court of South Dakota never acquired jurisdiction, and hence the due faith and credit clause of the constitution did not require the enforcement of the decree in Massachusetts against the public policy of that State as expressed in its statutes, It is to be noticed that both the first and second marriage involved in that case took place in Massachusetts. And as to the invalidity of the divorce, it is clear that different considerations apply to the determination of the validity of divorces than to the validity of marriages procured in evasion of the law of the domicile. Bishop, *supra*, §§ 836, 837.

Coming, now, to the case in hand, it requires no argument to show that, even if the marriage might have been void if solemnized in this State, it is nevertheless not such a union that it can in any sense be considered so subversive of good morals, or so threatening to the fabric of society, as to fall within the exception to the general rule regarding foreign marriages. In other words, if valid in Massachusetts, it is equally valid here.

As to its validity in Massachusetts, no authorities were cited by counsel; and we have not succeeded in discovering any Massachusetts statute or decision which would tend to show that the marriage is not valid there. Indeed, the only authorities we have found which seem to bear upon the point look the other way.

In *Parton* v. *Hervey, supra*, the facts were in some respects similar to those in the case at bar. The petitioner had married a female infant of the age of thirteen years, with the free assent of said infant, but without the knowledge or consent of her mother, who was her only surviving parent. The latter, claiming that the marriage was invalid without her consent, locked her daughter up and refused to allow her husband to have the custody of her person. The petitioner was allowed a writ of *habeas corpus* against the mother. The court say,

on page 122: "But in the absence of any provision, declaring marriages, not celebrated in a prescribed manner, or between parties of certain ages, absolutely void, it is held that all marriages, regularly made according to the common law, are valid and binding, although had in violation of the specific regulations imposed by statute."

And in *Inhabitants of Milford* v. *Inhabitants of Worcester*, 7 Mass. 48, 54–5, Parsons, C. J., said: "When a justice or minister shall solemnize a marriage between parties, who may lawfully marry, although without publication of the banns of marriage, and without the consent of the parents or guardians, such marriage would unquestionably be lawful, although the officer would incur the penalty of fifty pounds for a breach of his duty." See Par. Cont. 9 ed. vol. 2 p. 93.

In the absence, then, of any showing that Mr. Chace was either an idiot or lunatic at the time of the marriage, we are of opinion that the marriage in Massachusetts was valid.

(2) It is argued by counsel for the petitioner that, as there was at least the form of a marriage in this case, it can not be collaterally attacked, but must, for the purposes of this proceeding, be considered valid and binding. As the respondent's counsel took no notice of this point in his brief, however, and relies chiefly upon the invalidity of the marriage, we prefer to express no opinion upon that question, but to decide this branch of the case upon the ground selected by the respondent for his defence.

Having, now, as we think, established the validity of the marriage, we proceed briefly to inquire whether the facts of the case warrant the issuing of the writ.

In the first place, it is clear that the husband or wife of a person illegally restrained of his liberty is a proper person to petition for a writ of *habeas corpus*. *Parton* v. *Hervey, supra;* 15 A. & E. Ency. Law, 2d ed. 181, and cases cited; *ib.* p. 193. As to the effect of the marriage upon the status of guardian and ward, it is strenuously argued, on the part of the petitioner, that the marriage relation is inconsistent with the guardianship, and that as marriage is paramount to any other social status, the guardianship, at least of the person of Mr. Chace, termi-

nated upon his marriage. In support of this proposition he cites a number of authorities of great weight, including Woerner Amer. Law Guard. 335-6; Sch. Dom. Rel. 5 ed. § 313; Reeve Dom. Rel. 4 ed. 409; and Kent's Com. 12 ed. vol. 2, *226. None of these authorities, however, cites any decided case in support of this proposition, save in the case of the marriage of a *female* ward. Counsel for respondent, on the other hand, maintains that if the guardianship can be terminated by the ward's own act, without any action by the Probate Court, then, although he is incompetent and has been so adjudged, he immediately becomes competent to remove his own disability while still incompetent for every other purpose; and it must be admitted that this argument is a very cogent one. Fortunately, however, we are not under the necessity of deciding the question thus raised, for, even granting that the marriage of the ward did not terminate the guardianship of his person, the petitioner is still, under our own decision, entitled to the relief she prays.

In *Tillinghast* v. *Holbrook*, 7 R. I. 230, the court passed upon the question whether a guardian of the person and estate of a married woman could properly be appointed on the ground that she, for want of discretion in managing her estate, was likely to bring herself to want. It was held, in a learned opinion by Brayton, J., that such an appointment was valid. On page 250 he says: "Neither do we think that it is any sufficient objection to the decree, that the guardianship of the property is coupled with the guardianship of the person. It is not necessary, in the exercise of any of the guardian's powers, to invade any of the rights of the husband, either in the disposition and control of the property of the wife, or the custody of her person. Whatever control of her person may be necessary for her protection and for the assertion of her just rights must necessarily be given to the guardian, but this may be, and would be, in subordination to every just right of the husband. The custody of her person would not be taken from him unless for her protection."

In view of this decision, the remainder of the case is free from difficulty, and may be decided without questioning the

authority, either of the text-writers cited by petitioner, or of the decision last cited. If the marriage terminated the guardianship of the person, the petitioner is obviously entitled to the relief she seeks. If the guardianship is not thus terminated, yet, under our own decision, the control exercised by the guardian must be in subordination to every just right of the wife.

It needs no argument nor citation of authority to show that, in the absence of very exceptional circumstances, a wife is entitled to the society of her husband, free from the restraint of any third person. No such circumstances appear in this case. And, taking the facts above recited as true, as they must be assumed to be in the absence of anything to the contrary, it appears that the wife of the ward is prohibited by the guardian from enjoying the society of her husband, and that he is being restrained of his liberty in a way which calls for the interference of this court. See *Whitten* v. *Tomlinson*, 160 U. S. 231, 242. Whether the guardianship is terminated or not, therefore, the petitioner's right to a writ of *habeas corpus* is made out.

BLODGETT, J. I concur in the conclusion reached in the foregoing opinion, for the reason that the appointment of a guardian in Rhode Island had no effect upon the person or property of the ward in Massachusetts. *Mitchell* v. *Peoples Savings Bank*, 20 R. I. 500. And such is the law in Massachusetts—*Woodworth* · v. *Spring*, 4 Allen, 321; *Milliken* v. *Pratt*, 125 Mass. 374, and cases cited. And see *Hoyt* v. *Sprague*, 103 U. S. 613; *Morgan* v. *Potter*, 157 U. S. 195; *Wuesthoff* v. *Germania Life Ins. Co.*, 107 N. Y. 580. The ward, Henry C. Chace, when in Massachusetts, was not under the disability of guardianship there, and was, accordingly, *sui juris* in that State. And certainly in the absence of affirmative proof of fraud upon our law he is entitled to the benefit of the maxim, "*Nullus videtur dolo facere qui suo jure utitur.*"

Since this is decisive of the question, I prefer to withhold an expression of opinion as to whether the rule in *Medway* v. *Needham*, 16 Mass. 157, *supra*, decided in 1819, upon the

validity of a marriage celebrated prior to 1770, and which has been much criticised, or the opposing view taken by the House of Lords nearly fifty years later, in *Brook* v. *Brook*, 9 H. L. Cas. 145, *supra*, which has been also much questioned, shall be held to be the law of this State, until such time as a case shall arise in which it shall affirmatively appear that there was a deliberate attempt to evade the provisions of our law and it shall become necessary to determine between them.

The writ will issue as prayed.

*George S. Engle, F. P. Owen, and Willis B. Richardson,* for petitioner.

*Clarence A. Aldrich,* for respondent.