367 A.2d 1062.

WILLIAM GRANGER *et al. vs.* WALTER JOHNSON.

JANUARY 14, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This proceeding was commenced on November 27, 1974, with a pleading labeled "Complaint for Writ of Habeas Corpus." The complaint was signed by William Granger, his wife and their children. William Granger is a son of Doris Johnson by her first husband. The defendant, Walter Johnson, is Doris Johnson's present husband, having married her in 1966 after the death of William Granger's father. The case was heard by a Superior Court justice sitting without a jury and resulted in a judgment which enjoined Walter Johnson from preventing his wife from visiting, if she so desires, with William Granger and his family at the Granger home on two weekends each month, the visits to be conditional upon William Granger's having a licensed practical nurse in attendance.

The essential facts are undisputed. On February 29, 1968, Doris Johnson was involved in a serious automobile accident which deprived her of the use of her right arm and leg. She has since been confined either to bed or to a wheelchair, and her husband has provided her with the manifold attentions that a person so invalided requires.

Notwithstanding her disabilities, Doris Johnson has been able to leave her home from time to time, but only with assistance which customarily was provided by her husband. On some of those occasions she visited with her son and his family at their home, and they in turn came to see her at her home. This exchange of visits continued until the fall of 1974, when Walter Johnson learned that his wife had deeded certain residential property owned by her to William Granger and his brother. He accused William of having obtained that conveyance by fraud and told him that he would not allow the Grangers to visit his wife again until the property was reconveyed.

Unwilling to comply with that ultimatum, plaintiffs, acting on their own behalf as well as on Doris Johnson's, commenced this action by applying for a writ of habeas corpus. The writ issued, commanding defendant to produce his wife in court on December 9, 1974 and then and there to show cause for having taken and detained her. Prior to that date, however, Doris Johnson's physician advised the trial justice that her attendance at court would be detrimental to her health. Consequently, on December 9 court was convened at Doris Johnson's home, where she was sworn as a witness and testified that she wanted to visit with William and his family but was being prevented from doing so by her husband. The trial justice considered that evidence as determinative of the issues in the case and accordingly enjoined defendant from interfering with his wife's right to visit with William and his family. The defendant appealed.

In this court, plaintiffs' motion to dismiss on the ground that an appeal does not lie in a habeas corpus proceeding was denied without prejudice to their right to renew it at the hearing on the merits. *Granger* v. *Johnson*, 114 R.I. 934, 333 A.2d 154 (1975). After this court had affirmed the Superior Court judgment by an equally divided vote,

we granted defendant's motion for reargument. *Granger* v. *Johnson*, 116 R.I. 920, 352 A.2d 398 (1976). The case was again argued at this session of the court and is now in order for disposition.

At the threshold, plaintiffs renew their motion for a dismissal of the appeal on the ground that a judgment in habeas corpus is not appealable. The rule invoked by plaintiffs and prevailing at the common law is found in our statutes[1] and, except perhaps in child custody cases,[2] has been adhered to in our decisions. *State* v. *Palmigiano*, 115 R.I. 166, 169, 341 A.2d 742, 743-44 (1975); *Andrews* v. *Howard*, 111 R.I. 727, 727-28, 306 A.2d 835, 836 (1973); *Lee* v. *Gough*, 84 R.I. 358, 124 A.2d 549 (1956).

The rule of nonappealability applies, however, only if this is truly a habeas corpus proceeding, rather than one which, though denominated habeas corpus, is in essence a civil action seeking equitable relief. Which it is hinges on its substance, not its label, and, if the two do not conform, the label should be ignored and the proceeding treated according to its true nature. *Sarni* v. *Meloccaro*, 113 R.I. 630, 635-36, 324 A.2d 648, 651-52 (1974).[3]

---

[1] General Laws 1956 (1969 Reenactment) §10-9-22 provides that "[n]o appeal or exception shall lie to the judgment of the superior court in habeas corpus * * *."

[2] In some jurisdictions, an exception to the general rule permits an appeal from an order entered in a habeas corpus proceeding brought to determine the custody of a child. *E.g., People ex rel. Green* v. *Court of Appeals*, 27 Colo. 405, 409, 61 P. 592, 593-94 (1900); *Bleakley* v. *Smart*, 74 Kan. 476, 484, 87 P. 76, 79 (1906); *In re Thompson*, 77 Mont. 466, 471-72, 251 P. 163, 165 (1926); *State ex rel. Baird* v. *Baird & Torrey*, 19 N.J. Eq. 481, 487 (1868). Whether the exception prevails in this state depends on whether *Culpepper* v. *Martins*, 96 R.I. 328, 191 A.2d 285 (1963), is read as recognizing it *sub silentio,* or whether instead that case is deemed nonprecedential on the issue of appealability because that issue was not raised in the briefs. *But see Yates* v. *Easley*, 110 R.I. 425, 425 n.1, 293 A.2d 511, 512 n.1 (1972).

[3] In that case a petition seeking issuance of a writ of mandamus was treated as a complaint for affirmative equitable relief.

An examination of the essential characteristics of this proceeding makes apparent that the complaint, notwithstanding its caption, basically seeks a determination of whether defendant is improperly interfering with his wife's right to visit with her son and his family, rather than an inquiry into whether he is illegally restraining her. The distinction between the two, though perhaps not sharply defined, is certainly for our purposes more than semantical. This is demonstrated not only by the nature of the evidence upon which the trial justice relied, but also by the relief he granted. Had that relief been couched in traditional habeas corpus language, it would have directed Walter Johnson to release his wife from an illegal detention. It does not, however, take that form, but instead in familiar equitable language enjoins defendant from interfering with visits by his wife to her son and his family. That is the kind of relief granted in an action following the course of equity. It is alien to a habeas corpus proceeding. We conclude, therefore, that this is in reality a civil action seeking equitable relief rather than a habeas corpus proceeding and, accordingly, once again deny plaintiffs' motion to dismiss defendant's appeal.

Turning now to defendant's assignments of error, we consider initially his contention that the trial justice should have dismissed the application for a writ of habeas corpus because it was not signed, as required by G. L. 1956 (1969 Reenactment) §10-9-3, "* * * by the party for whose relief it is intended, or by some person in his behalf * * *." As construed by defendant, that enactment requires dismissal of the application in this case because it was signed neither by Doris Johnson, the party for whose relief it was in-

tended, nor by some person specifically authorized or directed by her to sign.[4]

In our opinion, defendant's reading of the statute is unduly restrictive. Clearly it is contrary to the authorities which say that an application by a "next friend" is permissible, though executed without the detainee's express direction, knowledge, or consent, provided the applicant is "* * * a friend, a relative, or a person having some interest in the one detained * * *." *Day* v. *Skinner,* 300 S.W.2d 48, 50 (Ky. 1957); *accord, Smith* v. *Scott,* 216 Ga. 506, 507, 117 S.E.2d 528, 530 (1960) (father); *In re Fuller,* 334 Mich. 566, 571-72, 55 N.W.2d 96, 99 (1952) (husband); *In re Chace,* 26 R.I. 351, 358, 58 A. 978, 981 (1904) (wife); *Nahl* v. *Delmore,* 49 Wash. 2d 318, 321, 301 P.2d 161, 163-64 (1956) (mother); *Pukas* v. *Pukas,* 129 W.Va. 765, 768, 42 S.E.2d 11, 13 (1947) (grandmother). Indeed, to require an express direction for the filing of an application would be anomalous because the very exigencies requiring an application by a next friend often make procuring the detained person's authorization impossible. Illustrative of this principle are *United States ex rel. Toth* v. *Quarles,* 350 U.S. 11, 13 n.3, 76 S.Ct. 1, 3 n.3, 100 L.Ed. 8, 12 n.3, (1955), in which the applicant brought habeas corpus proceedings on behalf of her brother, an ex-serviceman who had been arrested and transported to Korea to stand trial before a courtmartial, and *United States ex rel. Bryant* v. *Houston,* 273 F. 915, 916 (2d Cir. 1921), wherein the court said:

> "The practice of a next friend applying for a writ is ancient and fully accepted. There are many instances and circumstances under which it may not be possible nor feasible that the detained person shall

---

[4]We are, of course, aware that this contention assumes that this is truly a habeas corpus proceeding. Notwithstanding our rejection of that assumption, we will consider this issue as if its pertinence were not open to question.

sign and verify the complaint. Inability to understand the English language or the situation, particularly in the case of aliens, *impossibility of access to the person,* or mental incapacity are all illustrations of a proper use of the 'next friend' application." (Emphasis added.)

That prosecution of a next friend application may be permitted without insistence upon a showing that the detained person specifically authorized the filing does not mean that the writ of habeas corpus is available as a matter of course to intruders or uninvited meddlers styling themselves next friends. *Id.; State ex rel. Deeb* v. *Fabisinski,* 111 Fla. 454, 461, 152 So. 207, 209 (1933). It does mean, however, that courts need not be reluctant to hear next friend applications so long as the applicant has a legitimate interest in the matter and satisfactorily explains why the intended beneficiary has not himself applied for the writ. *Wilson* v. *Dixon,* 256 F.2d 536, 537-38 (9th Cir.), *cert. denied,* 358 U.S. 856, 79 S.Ct. 89, 3 L.Ed. 2d 90 (1958); *In re Harrell,* 2 Cal. 3d 675, 689, 470 P.2d 640, 648, 87 Cal. Rptr. 504, 512 (1970), *cert. denied,* 401 U.S. 914, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971). In our judgment, both prerequisites are met in this case.

The defendant next argues that this proceeding is nothing more than an action by the Grangers for visitation rights and that such a claim is not cognizable in equity. In our opinion, he both misses the thrust of the proceeding and misreads the record, which clearly establishes that relief was sought and granted more for Doris Johnson's benefit than for the Grangers'. This was recognized by the trial justice, who premised the grant of injunctive relief upon the specific finding that Mrs. Johnson "wanted to visit with her son and grandchildren."

The question, then, is not whether the Grangers are entitled to visitation rights, but whether in the peculiar circumstances of this case an injunction is a proper remedy

to enable Doris Johnson, over her husband's objections, to satisfy her express desires to see her adult child and his family. The parties have cited no authorities on this point, and our own research has produced only the case of *Leith* v. *Horgan*, 13 N.J. 467, 100 A.2d 175 (1953). In that case the plaintiff-parents, on their own behalf and on that of their invalid daughter, sought the aid of equity when their son-in-law refused to allow them to visit his wife because of the mutual loathing and hatred resulting from the parents' mistaken belief that their daughter's condition was a result of violence at her husband's hands. On those facts the court held that "[t]he welfare of the stricken wife is the determining consideration," *id.* at 477, 100 A.2d at 180, and that the parents should be permitted to visit their daughter if she desired to see them and if the visit could be accomplished without harm to her health.

To support that conclusion the court, after discussing at length the erosion of the husband's common law power to confine his wife, said:

> "The enlightened jurisprudence of the present day accords to the wife in full measure the equality and dignity that are hers of natural right as the mistress of the family, and the freedom, privileges and prerogatives in keeping with her exalted station—such as are incompatible with the notion of subordination to a degree interdicting intercourse with her parents and kinsfolk, unless in the special circumstances their exercise would plainly be violative of her family duties. The marital state is in its very nature superior, but not so exclusive and forbidding as to work a severance, unreasonably and arbitrarily, of all communion between the wife and her near of kin. Nature's laws are not so amenable to human decree. Neither spouse may allow filial love and affection, commendable as it is, to override conjugal duty. But marital unity would not be served by capricious restrictions upon the natural freedom of either spouse; quite the contrary." *Id.* at 476-77, 100 A.2d at 179-80.

We find this reasoning persuasive and accordingly hold that Walter Johnson may not use his physical control over his invalid wife to frustrate her desire to visit her son and his family.

Our Brother Doris, dissenting, relies upon *Cole* v. *Cole*, 277 Mass. 50, 177 N.E. 810 (1931), in which the court sustained a demurrer to a declaration alleging that the plaintiff's sister had wrongfully interfered with his relationship with his mother by excluding him from his mother's home and preventing him from communicating with her. That case appears distinguishable because it was an action at law seeking damages solely on the plaintiff's behalf, rather than an action seeking equitable relief on behalf of a third person. Even were we to concede that *Cole* is not distinguishable on its facts, it would nonetheless be our judgment that *Leith* v. *Horgan, supra,* is better reasoned and more persuasive.

The defendant's final argument is that in ordering "visitation rights" the Superior Court granted a remedy that, if appropriate under any circumstances, is within the exclusive jurisdiction of the Family Court. The short answer to that contention is that the Family Court is a court of limited jurisdiction, having only such authority as has been conferred upon it by statute. *Calitri* v. *Calitri*, 115 R.I. 465, 470, 347 A.2d 631, 634 (1975); *Rogers* v. *Rogers*, 98 R.I. 263, 267-68, 201 A.2d 140, 143 (1964). Nothing in the enabling legislation, §8-10-3, as amended, confers jurisdiction upon it in a matter of this kind.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Paolino, dissenting. The majority, in its opinion in this case, deploys the varied and ingenious arsenal of equity to restrain the respondent from interfering with his invalid wife's liberty to visit with her son

and his family. This tragic family dispute originated with Mr. Johnson's accusations that Mrs. Johnson's son had duped his mother out of certain real estate that she owned. It is a dispute which has caused Mr. Johnson to bar Mr. Granger's access to his mother, has instigated litigation on behalf of Mrs. Johnson to effect a recision of the conveyance to her son,[1] and has no doubt left a lasting residue of bitterness and resentment affecting all those concerned. This is an intensely personal affair which, though unfortunate, can never be within the power of a court or any other civil body to rectify. In the very opinion that the majority relies upon today to support the issuance of the present injunction, Mr. Justice Heher of the Supreme Court of New Jersey eloquently stated:

"Without mutual forbearance in the interest of the afflicted, as well as the peace of mind and soul that is dearer than all, the deep bitterness engendered by a family tragedy will intensify its grievousness and poignancy and dim the light of faith and hope in a crisis that calls for the finest spiritual qualities. It is indeed a time for the charity that suffereth long and is kind, and beareth and endureth all things." *Leith v. Horgan*, 13 N.J. 467, 468, 100 A.2d 175, 175 (1953).

These are indeed noble sentiments whose very tone engenders a sense that matters of this specie require the compassionate intercession of the supernatural or the finer personal qualities of humans rather than the sterile meddling of civil authorities.

I believe that the court in *Leith* uttered a self-contradictory proposition and thus established a self-defeating purpose for the lower court when it ordered the latter to

---

[1] On December 1, 1976, a justice of the Superior Court held, on the basis of uncontradicted evidence, that Mrs. Johnson's mental and physical health was such at the time of the conveyance that she "* * * was totally incapable of understanding the effect and consequences of her deed to the defendants." Thus, he ordered the deed rescinded. *Johnson v. Granger*, C.A. No. 74-3573 (Super. Ct. R.I. 1976).

frame its judgment so "* * * as to insure the exercise of such relief as may be awarded with emotional restraint." *Id.* at 477-78, 100 A.2d at 180. In short, it is my opinion that the subject matter of this case in the form in which it has been presented is not a proper subject for judicial action but is rather an occasion for judicial restraint. I would vacate the order of the Superior Court and dismiss the entire petition.

Mr. Justice Doris, dissenting. At the outset the court is confronted with the question whether or not the order of the Superior Court is appealable. The plaintiffs, contending that it is not, cite G. L. 1956 (1969 Reenactment) §10-9-22, which provides: "No appeal or exception shall lie to the judgment of the superior court in habeas corpus * * *." However, this argument begs the question of whether the order appealed from is truly a "judgment * * * in habeas corpus."

Conceding that the action here was initiated in the form of a petition for a writ of habeas corpus, I cannot agree that an action forever remains in the nature of habeas corpus simply because it was initiated in that form. To do so would elevate form over substance which this court has consistently refused to do, choosing rather to treat a proceeding according to its true nature rather than be limited to the form in which the action is brought. *See Sarni* v. *Meloccaro*, 113 R.I. 630, 324 A.2d 648 (1974).

The relief afforded by the order of the Superior Court justice is much more like a conventional injunction than a typical writ of habeas corpus. The relief in habeas corpus traditionally has been limited to a few specific forms, e.g., release of a prisoner, production of a witness, etc. In this case, plaintiffs' theory is akin to a charge of false imprisonment. If the relief sought in this case was a traditional writ of habeas corpus, the order could have properly directed the release of Mrs. Johnson. In fact, however, the

relief is more imaginative and finely tuned to the facts of the case, a hallmark of conventional equity jurisprudence. Additionally, the remedy in habeas corpus typically requires the defendant to perform only a single act, usually to release the prisoner. The order in this case differs and is more like a conventional suit in equity because defendant is *permanently enjoined* from a particular course of conduct.

Upon examining the characteristics of this case, I conclude as do the majority that the order appealed from was in substance a judgment in equity and may, therefore, be properly appealed.

Implicit in the issuance of this injunction is an assumption that the Superior Court, pursuant to its statutory powers in equity, has the authority to handle the matters presented in plaintiffs' petitions.

It is statutory law in this state that, unless specifically provided otherwise, the Superior Court has exclusive jurisdiction, over all suits and proceedings of an equitable character and of statutory proceedings following the course of equity. Section 8-2-13. The Superior Court may not, however, take cognizance of any suit that seeks to vindicate a speculative or abstract right. That is to say, before it may act, the complainant must show that he has suffered an injury to a legally recognized right. One court has stated:

> " 'While a court of equity may exercise broad powers in applying equitable remedies, it may not create new substantive rights under the guise of doing equity.' " *Wal-noon Corp.* v. *Hill*, 45 Cal.App.3d 605, 613, 119 Cal.Rptr. 646, 651 (1975).

The ingenuity of equity lies in its ability to fashion remedies, not in any supposed authority to create rights for those remedies to protect.

The instant case presents a degree of confusion in that at the time this proceeding was still being treated as a

petition for the issuance of the great writ, it was clear that plaintiffs-petitioners sought only one thing—the aid of the court in obtaining the "release" of Mrs. Johnson from the exclusive "custody" of her husband. Since the time, however, that petition was converted for all practical purposes into a civil action seeking equitable relief, the basis of plaintiffs' claim has become less easily identifiable. Although plaintiffs' version of these facts sets forth an alleged wrong that partakes severally of a number of legally recognized wrongs including false imprisonment, alienation of affections and conceivably the constitutional freedom to associate with whomever one pleases, I fail to perceive any right of a son to obtain injunctive relief enabling him to gain access to a private home for purposes of visiting with his mother.

A case decided by the Supreme Judicial Court of Massachusetts in 1931 bears a striking factual similarity to the case at bar. In *Cole* v. *Cole,* 277 Mass. 50, 177 N.E. 810 (1931), the plaintiff brought an action in tort against his sister alleging that the latter had excluded the plaintiff from the home of their mother. The declaration alleged that, pursuant to an agreement between the plaintiff and his mother by which "* * * the plaintiff at the request of his mother promised and agreed to live near, consult with, and assist her at her home and visit her as often as convenient * *. *", the mother and the plaintiff had enjoyed and preserved the natural love and affection they had for one another. *Id.* at 51, 177 N.E. at 810. The plaintiff further alleged that prior to the time that his sister took up residence with the mother, he had responded to the mother's requests by paying her frequent visits. The declaration continued that since the defendant moved into the mother's house, she had intentionally and without justification excluded the plaintiff therefrom and that, independent of the fact that this

action interfered with the agreement between the plaintiff and the mother, the defendant's actions "* * * deprived him and her [the mother] of the comfort, society, aid and assistance which such natural and normal relationship and affection furnish and afford * * *." *Id.* at 52, 177 N.E. at 810. In the Superior Court, the defendant demurred to the plaintiff's declaration and the demurrer was sustained. That is, having assumed the facts were as the plaintiff alleged them to be, the Superior Court found that the declaration failed to set forth substantive facts necessary to constitute a cause of action and "that it did not contain any single, clear and distinct cause of action." *Id.* at 51, 177 N.E. at 810. The Supreme Judicial Court affirmed.

It is my opinion that the reasoning of *Cole* v. *Cole, supra,* should apply with especial force to deny the present plaintiffs' requested relief insofar as in this case there was no formal agreement memorializing the intent of mother and son to share affections and consultation. The thrust of the *Cole* decision is simply that an emancipated child has no legally recognizable right to enjoy the company of his mother. The fact that the Massachusetts ruling arose out of an action for damages rather than out of a suit in equity is of no moment. Equitable relief, no less than damages at law, is fashioned by the courts to vindicate the legal rights of parties. Where no legal right exists a court sitting in equity must stay its hand. Thus, in the instant action, it is my belief the Superior Court transgressed the boundaries of its statutory authority by the issuance of the order enjoining defendant from interfering with or preventing his wife from visiting with plaintiffs and from depriving plaintiffs of access to defendant's home for purposes of escorting Mrs. Johnson to and from the automobile.

The foregoing should in no way be construed as a con-

clusion that the facts as presented in the plaintiffs' petition, if substantiated upon hearing, could not constitute cause for the issuance of a writ of habeas corpus. Nor should the views expressed herein be construed as supporting the proposition that Mrs. Johnson, either on her own or through an appointed guardian, could not bring a civil action to vindicate some legal right that *she* might have. The only conclusion I would reach here is that the Superior Court exceeded its authority in granting this injunction. I would therefore sustain the defendant's appeal.

*Blais, Cunningham, Thayer, Gagnon & Ross, Ronald R. Gagnon,* for plaintiffs.

*Francis O'Brien,* for defendant.