THE STATE, BAIRD, prosecutor, appellant, and BAIRD and TORREY, respondents.

1. An appeal will lie from a decree in the Court of Chancery, which settles permanently the right to the custody of infants, although the proceedings in the case were commenced by *habeas corpus.*

2. Where the pleadings and proofs made an issue as to the right to the permanent custody of infants, and the decree determined such right, it was held, that the court acted in the matter under its general superintendency over the affairs of infants, and not by force of its more limited jurisdiction in proceedings by *habeas corpus.*

3. Whether a writ of error or an appeal will lie from a decision in a proceeding strictly by *habeas corpus.* *Quere.*

The petition, which was filed in the Court of Chancery, in this case, sets forth, that the petitioner had been deserted by his wife, who had left his house in Philadelphia and, taking her five children with her, had gone to live with her father at Manchester, in this state; that petitioner had gone to Manchester, but that his wife would not see him, and that this was the only occasion since their separation, on which he had seen his children; that since their separation his wife had borne to him another child, making the sixth child of the marriage; that petitioner had been credibly informed and believed that said children were in the custody of his said wife and in that of her father; that petitioner was advised that, by the laws of this state, he was entitled to have the custody of the three eldest of said six children, who were above the age of seven years, and reasonable access to the others, who were under that age; and he, therefore, prayed a writ of *habeas corpus* to be directed to his said wife and her father, &c.

To this writ, the respondent, Mrs. Baird, made a return, justifying her desertion of her husband, and alleging he was an improper person to have the care of the children, on the ground of his cruelty to her, and his impurity and immoral-

ity of character. There were various specifications in support of these general charges.

The father-in-law also put in a return, denying that the children were in his custody.

An answer being filed, proofs were taken at great length.

The case being called in this court for argument, a motion was made to dismiss the appeal. The grounds of such motion appear in the opinion.

Mr. F. B. Chetwood and Mr. Williamson, for the motion.

Mr. Carpenter and Mr. Browning, contra.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The present motion rests on the single ground, that an appeal will not lie from an order made by the Chancellor in a proceeding by habeas corpus.

An order made strictly in pursuance of an habeas corpus, has the effect, simply to remove the unlawful restraint, and hence it has been a debatable question, whether such order, being of a merely temporary character, could be properly the subject of appellate cognizance. Such an order had no efficacy in settling the right to the continued guardianship of infants. Such is not, in technical strictness, the office of this inestimable writ. In the case of Wollstonecraft, 4 Johns. C. R. 82, Chancellor Kent observed, " that the object of the writ was to release the infant from all improper restraint, and not to try, in this summary way, the question of guardianship." It is true that in some cases the court will go somewhat beyond the mere removal of the unlawful restraint, and will transfer the person brought up by the writ, into the custody of him who has the clear legal right. Although there is much confusion in the precedents on this branch, this I understand to be the correct rule of practice. And such, in some instances, should be the course pursued even where the subject of the writ is of an age to make an elec-

The State, Baird, pros., v. Baird and Torrey.

tion for himself.   The case of *Rex* v. *Delaval*, 3 *Burr.* 1434, presents, in a very clear light, the necessity for the existence of this power.   The writ in that case was issued at the instance of a father, to bring before the court his daughter. This girl was about eighteen years of age, and had been bound as an apprentice to a musician, but it was shown that with the consent of her master, she had been put into the hands of the defendant, Delaval, for the purpose of prostitution.   Under these circumstances, it would have been a strange defect in the law, if the court, having this infant in its presence, and subject to its power, could not have removed her from the influence of her seducer, and placed her, even against her will, in the care of her parent.   In this class of cases, I can perceive no reason why the court has not the discretion either to let the person affected by the writ go free from all restraint, or to permit the legal custodian to put in force his authority, in the presence and with the assistance, if necessary, of the court.   This was, I think, evidently the view of Lord Mansfield on this subject, for in the case referred to he considered the right of the father to the custody of the girl, and refused to award it to him only on the ground of the improper conduct of the parent.   But it should not be overlooked that in taking the course here indicated, it can scarcely be said that the court puts its authority into active operation, for in truth it simply remains passive, while the legal right of custody is effectuated.   And yet it is clear that this inaction, to some extent, is optional, for it has been quite habitual for the court, in the exercise of its discretion, to protect the party brought into its presence, in returning to his place of abode.   This power was exerted in the case above cited from *Burrow.* The rule of practice, as above defined, will be found to be sustained or illustrated in the following cases: *Rex* v. *Clarkson*, 1 *Str.* 444 ; *Ex parte Hopkins*, 3 *P. Wms.* 151 ; *Matter of McDowles*, 8 *Johns. R.* 328 ; *Matter of Waldron*, 13 *Johns. R.* 418.

It will be perceived that the course of practice thus indi-

cated, does not require the same stretch of power which has been exercised in the present case. By the decree now appealed from, the situation of these infants has been permanently fixed. Such a result cannot be justified as the legal conclusion of a procedure by *habeas corpus.* This is not the formula, by the use of which the right to the guardianship of infants is to be conclusively adjudicated, In the case of *The People* v. *Mercein,* 8 *Paige* 55, it was explicitly declared by Chancellor Walworth, that neither by the common law nor by the statutes of New York, was the writ of *habeas corpus ad subjiciendum,* a proper mode whereby to try a claim to the guardianship of an infant, and that the Court of Chancery, upon such a writ, would exercise its discretion upon the same principles which control the action of other courts and officers who have a capacity to allow the writ in similar cases. And that this, in truth, was the rule of the common law will be clearly manifest to any one who will turn over the train of cases at law and in chancery, with his eye on this point. The course of practice, I think, was obviously this: If the simple purpose was to free from illegal restraint, the proceeding was either in the law courts, or in chancery, by the instrumentality of the *habeas corpus;* and in such proceeding, a court of equity had no power to make any order which was not within the competency of a law judge. But, on the other hand, when the object was to fix the status of a minor with regard to permanent custody or guardianship, and to settle, for any course of time, the rights of contending parties to such custody, then the application was to the Chancellor, by virtue of his general superintendency over the concerns of infants. The proceeding then was by petition to him, as *parens patriæ.* This distinction between the Chancellor's jurisdiction over infants by *habeas corpus,* and as wards of the court, is clearly marked in the practice, and has been often noted by the court. Lord Eldon, in *Lyons* v. *Blenkin, Jac.* 245, plainly discriminates these two branches of jurisdiction; and, after directing a reference to a master to inquire as to the mode in which the infants had

been maintained, says: "The reason why I propose to do this is, that I desire to put upon the record some of those circumstances that induce me to act in a manner different from what I should upon an *habeas corpus.*" And with still greater explicitness the same distinguished authority, in a case reported in a note to the volume just cited, says: "He apprehended that the jurisdiction which he had upon an *habeas corpus* was exactly the same as if it was before a judge; and he apprehended a judge attended to nothing but cruelty or personal ill-usage to the child as a ground for taking it from its father." But, on the other hand, when the application was made to that beneficent prerogative which exists in chancery, to see to the protection and provide for the proper care of those who, from their tender years, were ofttimes helpless and undefended against cruelty and oppression, then it was that the power of the court took a wider reach, and in such a procedure the care and custody of infants could be provided for with some degree of permanence. And it was by this method, also, that the rights of the parents and relatives of the minors, with regard to their intercourse with them, or control over them, were regulated and secured. And it seems to me that the case now before this court on this appeal, must be classed under this branch of equity jurisdiction. Considering the proceeding in chancery as one at common law, in strict pursuance of the writ of *habeas corpus*, the decree which has been made could not be supported, for in such a course of law all that could be done was to free the infants from restraint. The capacity to establish a permanent control over the infants is clearly vested in the Chancellor, by virtue of his high office, but such power could not properly be called into action by a writ designed to prevent the continuance of unlawful imprisonment. But it was not to this limited authority of the Chancellor, that the parties in this case have addressed themselves. The petition itself has this wider scope, and evidently invokes the exercise of that power of the court which is quasi-paternal. It does not even suggest the existence of any unlawful restraint of these infants. Its claim

2s*

is to the charge and custody of the children, on the ground that the wife had separated herself from her husband, and that he, upon general principles, is their legal guardian. The return and answer, by their respective allegations, present the question most distinctly, which parent, under all the circumstances, is entitled by the judgment of the court, to the permanent custody of the children. This is the specific issue which the parties themselves have made, and to which the unwieldy mass of testimony, which has been taken, relates; and this is the issue which, in substance, has been decided by the Court of Chancery. Under these circumstances, this decision was fully warranted. It was intimated on the argument that this question of guardianship could not, with strict propriety, be presented for adjudication by means of a petition, unless in cases in which a suit, touching the property of the infants, was pending. But this objection is not well founded. Orders relative to the guardianship of infants, without a cause depending, have been made frequently. It was a point expressly so decided in *Villareal* v. *Mellish*, 2 *Swanst*. 533. The following are also precedents in favor of the same practice. *Reynolds* v. *Lady Tenham*, 9 *Mod*. 40; *Ex parte Salter*, 2 *Dick*. 769; *S. C.*, 3 *Bro. Ch. Cas*. 501; *O'Keeffe* v. *Casey*, 1 *Sch. & Lef*. 106.

Nor does it seem to me that there is any weight in the suggestion that, looking on these proceedings as appertaining to the general jurisdiction of chancery, the *habeas corpus* was not the proper process to bring the parties into court. It is certainly sufficient to say that the parties interested have actually appeared and been heard upon the merits, and that consequently, upon obvious principles, no exception on this ground can be taken. The decision which has been rendered must be conclusive on these litigants, as there can be no doubt that all courts and magistrates, except an appellate tribunal, would be bound to regard as *res adjudicata* the right of the mother, by force of this decree, to the custody of these infants. The circumstance that an *habeas corpus* has been used cannot alter the legal nature of

the transaction, for even if we regard the use of this writ as irregular, such anomaly can have no effect, because the use of inappropriate process cannot affect the jurisdiction of the Chancellor. The case put before him by the parties was conspicuously within his cognizance, and the respondent, who has a decree in her favor, cannot set up, to defeat this appeal, that such decree, although warranted by the pleadings and proofs, is broader than is technically proper under the process which has been used.

Nor is it unimportant to remark, that the use of the *habeas corpus* in this proceeding was, to some extent at least, obviously regular. This writ is made the proper process with respect to such of the children as were under the age of seven years, by force of the statute relating to the custody of infants. *Nix. Dig.* 391. So far, therefore, as the decree applies to those of the children who were under the age thus designated, there can be no doubt of its technical propriety, even if we should take the case as a proceeding limited and controlled by the most rigorous practice on an *habeas corpus.* But I do not place my judgment on this narrow and partial ground, for I think the entire decree, as a mode of proceeding, under the pleadings and proofs in this case, is to be fully vindicated. A litigation was presented, appealing to the general power of the court, and the Chancellor, as it seems, has properly exercised that power.

Having arrived at the above conclusion, and as the decree in the present case gives the mother, who is the respondent on this record, the permanent custody of these children, and as that question was, in the pleadings and evidence, properly before the Court of Chancery, it follows, as an inevitable corollary, that an appeal will lie to such decree. That a decree, possessed of such characteristics, is the subject of appellate revision, so far as is known, has never been denied. The precedents of appeals in such instances are abundant. The motion to dismiss this appeal, therefore, should be denied.

Before leaving the subject, it is proper that I should say, that I do not wish to be understood as conceding the position

that; in a pure *habeas corpus* case, it follows unavoidably that an appeal or writ of error will not lie. This is a vexed question about which courts of the utmost learning have differed. I desire, however, to remark, that there are many considerations which incline me to the view that, in some cases at least to which the *habeas corpus* is applicable, an appeal or writ of error to decisions rendered thereon, would lie to this court. A reference to the minutes of this court in the Term of May, 1792, will show that a writ of error in a proceeding by *habeas corpus* was returned here, although it does not appear what disposition was subsequently made of the matter. But in a similar proceeding, at a later date, this court did entertain jurisdiction, and adjudicated the question involved. *The State* v. *Post*, 1 *Zab.* 699. See also *The State* v. *Farlee, Coxe* 82.*

The whole court concurred.

JUNE TERM, 1868.

* After reading the opinion denying the motion to dismiss, argument was immediately had upon the appeal. The opinion of the court upon the appeal has been unfortunately lost ; a diligent search and inquiry has failed to discover it, and the reporter greatly regrets that its publication will have to be postponed, at least till the appearance of another volume. By the decree of the Court of Appeals, in accordance with that opinion, the two youngest children were left with their mother, and the eldest was allowed her election ; the other three to be delivered into the custody of their father. The opinion of the Chancellor is reported in 3 *C. E. Green*, 195.