These matters come before me on writs of habeas corpus which I allowed to each case. Each petitioner was arrested and committed to jail by virtue of warrants issued on the complaint of the chairman of a committee of the New Jersey *Page 491 
House of Assembly. Each complaint on which the said warrants issued sets forth that the petitioner was "brought before a special committee of the House of Assembly of the State of New Jersey appointed under assembly resolution I of the sessions of 1938 upon warrant issued for that purpose by the speaker of said house, did after being duly sworn refuse to answer questions decided by the committee aforesaid to be proper and pertinent, contrary to the statute in such case made and provided." The petitioners were held in custody at the time the applications for the writs of habeas corpus were made to me.
The committee of the House of Assembly was appointed pursuant to assembly resolution I, which resolution reads as follows:
"Assembly Resolution Appointing an Assembly committee of five members of the General Assembly to be appointed by the Speaker thereof, to make a survey of all questions of public interest, including a survey of the finances and expenditures of the State, counties and municipalities, to investigate violations of law and the conduct of any State, county or municipal official; State, county, or municipal department; State, county or municipal commission; State, county or municipal board; or State, county or municipal body; to investigate alleged fraudulent and illegal conduct at the general election on November second, one thousand nine hundred and thirty-seven; to investigate the alleged tampering with, and marking of, or altering of, or counting of, ballots cast at said general election; to investigate the alleged tampering with, or altering of, the permanent registration records and duplicates thereof, the poll books and other election records, used at, or provided for, said general election; to investigate alleged fraudulent and illegal conduct on the part of the County Board of Elections and on the part of the District Board of Elections at said general election; to ascertain whether the duties of such officials, departments, commissions, boards, bodies, and of such County Boards of Elections and of such District Boards of Election have been or are being lawfully and properly discharged, and to report its findings as a basis for such legislative action as the General Assembly may deem necessary and proper.
Whereas, on November 2, 1937, there was held in the State of New Jersey a general election for the purpose of electing a governor of the State of New Jersey, in which election Lester H. Clee was the candidate of the Republican party and A. Harry Moore was the candidate of the Democratic party, and
Whereas, after the said election the said Lester H. Clee filed a petition with the Supreme Court of the State of New Jersey for a *Page 492 
recount of the votes cast at such election in certain districts, wards and municipalities in the County of Hudson and also filed a petition contesting the election of said A. Harry Moore by reason of alleged malconduct, fraud or corruption in the conduct of said election, and
Whereas, said recount has disclosed many fraudulent and illegal acts at said general election in that ballots contained in the ballot boxes opened at said recount appeared to have been tampered with, marked, altered, erased and miscounted, and
Whereas, the poll books and other election records used in said election disclosed fraud, corruption and malconduct on the part of district boards and others, and
Whereas, the petition of contest filed by said Lester H. Clee alleged malconduct, fraud and corruption and the casting of many illegal votes in various districts, wards and municipalities in Hudson County, and further alleged that the poll books and permanent registration records and the duplicate thereof and other election records used at said election would disclose the nature and details of said malconduct, fraud and corruption and other illegal acts, and
Whereas, the Supreme Court has announced its decision that a motion to dismiss said petition will be granted, and
Whereas, said contestant has had no opportunity to present evidence of the charges contained in his said petition for contest, and
Whereas, certain political leaders and advisers of the Democratic candidate have denied that there was any malconduct, fraud, or other illegal acts in the conduct of said election and have invited a complete investigation thereof, and
Whereas, said alleged acts and others which have been brought to the attention of the members of the General Assembly have shocked the public conscience and created widespread distrust in the conduct of elections in this State and call for immediate and thorough investigation for the protection of the voters and the good name of the State.
Be It Resolved by the General Assembly of the State of NewJersey:
1. An Assembly committee of five members of the General Assembly shall be appointed by the Speaker thereof, to make a survey of all questions of public interest, including a survey of the finances and expenditures of the State, counties, and municipalities, to investigate violations of law and the conduct of any State, county or municipal official; State, county or municipal department; State, county or municipal commission; State, county or municipal board; or State, county or municipal body; to investigate alleged fraudulent and illegal conduct at the general election on November second, one thousand nine hundred and thirty-seven; to investigate the alleged tampering with, and marking of, or altering of, or counting of, ballots cast at said general election; to investigate the alleged tampering with, or altering of, the permanent registration records and duplicates thereof, the poll books and other election records, used at, or provided for, said general election; to investigate alleged fraudulent and illegal conduct on the part of the County Board of Elections and on the part of the District Board of Elections at said general election; to ascertain whether the duties of such officials, departments, commissions, *Page 493 
boards, bodies and of such County Boards of Election and of such District Boards of Election have been or are being lawfully and properly discharged, and to report its findings as a basis for such legislative action as the General Assembly may deem necessary and proper."
The balance of the resolution deals with officers and employes of the committee, c., and which, with the exception of paragraph 5, is not necessary to quote. Paragraph 5 reads as follows:
"5. Said committee shall report the result of its survey and investigation, together with such recommendations as may seem to be advisable, as a basis for such legislative action as the General Assembly may deem necessary or proper, to the present or subsequent session of the General Assembly."
The petitioner James Martin testified before the said committee, of which Mr. Henry Young, Jr., was chairman, and answered certain questions, asked by Mr. Wiener, counsel for the committee, relative to his name, residence, occupation, c., and was then asked the following questions:
"Q. Did you tally the votes in the third ward of the ninth district of the evening of November 2d 1937?
"A. I refuse to answer that on advice of my counsel.
 * * * * * * * "Q. Why should you be afraid to answer this question?
"Mr. Young (said chairman): All right, he refuses to answer. The committee has already determined the question to be a proper question.
"Mr. Wiener: All right, I will put a formal question to this gentleman, too.
"Q. I take it that on advice of your counsel you now refuse to answer all questions which may be put to you concerning your conduct as a member of the election board of the third ward, ninth district, Jersey City, on November 2d 1937?
"A. Yes, sir."
The petitioner John J. Gangemi answered certain questions by Mr. Wiener as to his name, residence and employment and then was asked the following question: *Page 494 
 "Q. Were you the inspector in the third ward, ninth district, in Jersey City, on November 2d 1937?
"A. I refuse to answer on advice of my counsel.
"Mr. Young (chairman of said committee): That I think is sufficient. We have already determined that question to be a proper question.
"Mr. Wiener: I take it that on advice of your counsel you will refuse to answer questions put to you concerning your conduct as a member of the election board of the third ward, ninth district, on November 2d 1937?
"The witness: That is right."
The petitioner Christopher J. Kelly answered certain questions asked by Mr. Wiener, counsel for the committee, as to his name, residence and occupation, and then was asked the following questions:
"Q. Were you the member of the election board of the third ward, ninth district, Jersey City, on November 2d 1937, who read the ballots?
"A. I refuse to answer on advice of counsel. That goes for all.
"Mr. Young (chairman of the committee): That is sufficient. The committee has already decided that that question is proper.
"Q. I take it that you are about to refuse, or you do refuse, on advice of counsel, to answer any question pertaining to your conduct as an election officer in the third ward, ninth district, on November 2d 1937?
"A. Through advice of counsel, I do."
After further discussion the following record appears:
"Mr. Young: May I have a formal authorization to sign the complaint?
"Mr. Palese (member of the committee): I move that Mr. Young be authorized to sign any necessary papers to properly arraign these three individuals before the court.
"Mrs. Sandford (member of the committee): I second the motion.
"(Motion carried.)"
The warrants, arrests and commitments to jail of the three petitioners followed this action of the said committee. *Page 495 
On the day of the hearing the respondent in each case filed a reply to the traverse admitting all the statements contained therein except paragraphs 4, 9, 14 to 21, inclusive, whereupon the solicitor of the petitioners abandoned paragraph 4 of the traverse in each case. The respondents thereupon admitted in open court everything contained in the traverse to the return except paragraph 4 and waived the requirement of proving same. Solicitor for the petitioners then offered in evidence a stenographic copy of the complete proceedings of the said assembly committee, appointed pursuant to resolution I of the House of Assembly, a letter addressed to his Honor, Governor A. Harry Moore and signed by the members of the said assembly committee dated February 9th, 1938, and also the files of the clerk of the supreme court pertaining to a recount of the votes cast at the last gubernatorial election in which Governor A. Harry Moore was the Democratic candidate and State Senator Lester H. Clee was the Republican candidate, being Docket No. 5/463 (File 14283) in the said supreme court clerk's office, and also the files of an application to his Honor, Chief-Justice Brogan to investigate fraud, c., alleged to have taken place at such gubernatorial election for the purpose of setting aside the said election of Governor Moore, being Docket No. 5/465 (File 14296). These exhibits were offered to show the purpose and the circumstances which prompted the adoption of said assembly resolution I and the nature of the investigation by the said committee pursuant to said resolution. Solicitor for respondent objected to these offers on the ground that they were immaterial.
In regard to the admissibility of the offer of the proceedings of the committee, I have reached the conclusion that so much of the testimony appearing therein as deals with the objects and purposes of the investigation and with the questions put to the petitioners by the committee is admissible. However, I have only considered in arriving at a conclusion the questions asked the petitioners and their answers. In regard to the admissibility of the files of the supreme court clerk in the two proceedings before the supreme court or *Page 496 
before Chief-Justice Brogan to which objection was made by the respondent, I find as follows: I will admit in evidence the petitions or applications and the determinations or discontinuances of the matters for the reason that they appear in the preamble of the resolution and also are referred to in respondent's brief. I assume since they are referred to in respondent's brief the objection must have been waived by respondent's solicitor. In regard to the letter written by the committee to his excellency, the present governor, I have not considered its contents in arriving at my conclusions for the reason that I have determined it to be immaterial.
Solicitor for the petitioners in arguing for the discharge of the petitioners relies on three points:
First, that the court of chancery has power to issue writs ofhabeas corpus under the Habeas Corpus act to the same extent as that power is conferred upon a justice of the supreme court. Counsel for respondent admits that in a proper case this court has power to issue writs of habeas corpus but that under the admitted facts in this case the writs should be dismissed for the reason that this court should not and could not take jurisdiction.
Second, that the resolution of the House of Assembly in so far as it attempts to empower the committee to investigate violations of law and alleged fraudulent and illegal conduct at the general election held on November 2d 1937, usurps the functions of the judicial and executive departments of the state and is, therefore, to that extent unconstitutional and void. Solicitor of respondent denies that the resolution is unconstitutional and void and contends that the said committee has authority to conduct the investigation for the purposes stated in the resolution and in accordance with the procedure.
Solicitor of the petitioner's third point is that because the resolution, upon which jurisdiction to hold the petitioners in custody is predicated is a nullity, the committing magistrate lacked jurisdiction over the subject-matter when he committed the petitioners to jail. Respondents answering this point say thathabeas corpus in this court is not the proper *Page 497 
remedy because the court in which the petitioners were held has jurisdiction to hear and determine whether the failure of the petitioners to testify constituted a violation of law.
At common law a writ of habeas corpus ad subjiciendum might issue out of the court of chancery, court of king's bench, court of common pleas and the court of exchequer. It is a very ancient and famous writ often referred to as the great writ of liberty. In New Jersey in 1710 the assembly denounced one of the judges for refusing the writ to Thomas Gordon which they said was the undoubted right and great privilege of the subject. This writ comes to us from England and was so recognized in this state by the Habeas Corpus act of March 11th, 1795. The writ was guaranteed to our court of chancery by the constitution of 1844. The Habeas Corpus act of March 7th, 1874, is incorporated in the 1 Rev. Stat. 1937 2:82 p. 381, c.
The jurisdiction of this court relative to issuing writs ofhabeas corpus is set forth in In re Thompson, 85 N.J. Eq. 221,c.; Buckley v. Perrine, 54 N.J. Eq. 285; State, Baird v.Baird, 19 N.J. Eq. 481. These cases point out that the court of chancery, acting through a vice-chancellor, has the same jurisdiction as if the proceeding was before a judge of a court of law.
Considering next the resolution of the House of Assembly, solicitor of the petitioners claims that the house is attempting to usurp a judicial function which is prohibited by the constitution. Article III, paragraph 1, of the state constitution provides:
"1. The powers of the government shall be divided into three distinct departments — the Legislative, Executive, and Judicial; and no person or persons belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided."
Article IV, section 1, provides: 1. The legislative power shall be vested in a Senate and General Assembly.
Article V, paragraph 1, provides: 1. The executive power shall be vested in a Governor. *Page 498 
Article VI, section 1, provides: 1. The judicial power shall be vested in a court of errors and appeals in the last resort in all causes as heretofore; c.
The legislature, therefore, is not expressly given by the constitution any judicial functions whatever except those stated therein. The power of the legislature to investigate is dealt with by the late Chief-Justice Beasley in the case of Maxwell
v. Goetschius, 40 N.J. Law 383. In that case the late chief-justice said:
"By the constitution of 1844, it is provided that `the powers of the government shall be divided into three distinct departments — the legislative, executive, and judicial; and no person or persons belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided.' So far as legislative judicature is concerned, it is expressly put an end to by this provision; and after this plain circumscription of its sphere of action, there can be no pretense for a claim that the legislature can exercise any judicial function whatsoever, except such as is, in terms, allowed to it in the constitution itself. Not content with a distribution of the powers of government to the three departments, there is superadded a prohibition against either infringing on the others, a circumstance bearing the semblance of an admonition to guard against such a perversion. Since this explicit marking out of the several departments, it has been the general opinion, so far as I can learn, that the legislative power is the only power vested in the legislature. Such appears to be the view expressed inColgan v. McKeon, 4 Zab. 566; State, Winans, Pros., v.Crane, Collector, 7 Vr. 394; State v. Newark, 3 Dutch. 185.
"The power of the legislature being, then, thus limited to this single field of action, how is the enactment of the present law to be vindicated?"
The petitioners contend that the resolution undertakes to empower the committee appointed by the house of assembly to investigate violations of law and fraud in the last gubernatorial election and thereby usurps the duties and functions *Page 499 
of the judicial department of the state, and that the committee undertook to do this very thing. The resolution is preceded by a title and preamble. The title sets forth that it is a resolution providing for the appointment of a committee of five members by the speaker to survey all questions of public interest including finances, expenditures of the state, counties and municipalities and to investigate alleged fraudulent and illegal conduct of election officials and others at the general election on November 2d 1937, c. The preamble sets forth that an election was held on November 2d 1937, for the purpose of electing a governor and that the candidates were Lester H. Clee, Republican, and A. Harry Moore, Democrat; that after the said election the said Lester H. Clee filed a petition charging malconduct, fraud or corruption, and that the recount disclosed many fraudulent and illegal acts; and that the supreme court has announced its decision that it will grant a motion made to dismiss the said Clee's petition; and that the said Clee has had no opportunity to present evidence of the charges made in his petition; and that said alleged acts of fraud, malconduct and corruption have been brought to the attention of the members of the general assembly and have shocked the public conscience and created widespread distrust in the conduct of elections of this state and call for immediate and thorough investigation for the protection of the voters and the good name of the state. The resolution itself directs that the speaker appoint a committee of five members of the general assembly to make a survey of all questions of public interest including finances and expenditures of the state, counties and municipalities; to investigate violations of law and the conduct of any state, county or municipal official, c.; and further directs the committee to investigate alleged fraudulent and illegal conduct at the said general election held November 2d 1937, c. The purpose of a title is to set forth the object of the resolution. A preamble is an introductory or explanatory statement. It is not considered part of a resolution. It is an aid, it is true, in interpreting any ambiguity which may exist in a resolution. Noice v. Schnell, 101 N.J. Eq. 252. A *Page 500 
preamble reciting the existence of public outrages, provision against which is made in the body of the act, is evidence of the facts it recites. 2 Bouv. Dict. 2653. (See 118 N.J. Eq. 31.
Affirmed by court of errors and appeals, 119 N.J. Eq. 37). The resolution itself bears out and follows both the title and the preamble and calls particularly for the investigation of the gubernatorial election held on November 2d 1937.
All the charges appear to deal with crime or criminal conduct of election officials and others in the conduct of said gubernatorial election. The solicitor of the petitioners contends that the resolution deals with violations of criminal law as well as an investigation of the enforcement of the criminal laws. He, therefore, says that this is not a proper legislative function and that it is governed by the case of Ex parte Hague, 9 N.J.Mis. R. 89; 150 Atl. Rep. 322; 123 N.J. Eq. 475. In the HagueCase, above referred to, the legislature had adopted a joint resolution appointing a joint committee of the house and the senate and requiring the said committee to "make a survey of all questions of public interest; to investigate violations of law and the conduct of any state, county or municipal official, state, county or municipal department, state, county or municipal commission, state, county or municipal board, or state, county or municipal body, to report whether the functions of such officials, departments, commissions, board and bodies have been or are being lawfully and properly discharged for the purpose of obtaining information relative thereto as a basis for such legislative action as the Senate and General Assembly may deem necessary and proper."
By virtue of the above resolution Frank Hague, the mayor of Jersey City, was called before the joint committee to answer certain questions which are set out in the opinion of the court of errors and appeals written by the late Chief-Justice Gummere. On the refusal of Hague to answer the questions, the joint committee reported that fact to the legislature and the legislature then convened in joint session and the questions were again put to Hague and he again refused *Page 501 
to answer them. Upon his refusal to answer, the joint session adjudged him in contempt, caused a warrant to be issued for his arrest and directed that he be confined in jail until he should agree to answer the questions. Hague then applied to Vice-Chancellor Fallon for a writ of habeas corpus praying that he be discharged from custody upon the ground that the warrant was illegally issued. The vice-chancellor concluded that the arrest was without legal justification and ordered him discharged. The legislature thereupon appealed to the court of errors and appeals. In the opinion by the late chief-justice the following appears:
"The fundamental question involved in the determination of this appeal is whether in the submitting of these questions the legislature was exercising a function vested in it by the constitution, or was invading the judicial department of the government. Article III of our constitution declares that `the powers of the government shall be divided into three distinct departments — the legislative, executive and judicial; and no person or persons belonging to, or constituting one of these departments, shall exercise any of the powers properly belonging to either of the others, except as herein expressly provided.'
"As will have been noted, the resolution under which all of these proceedings were had provided, among other matters, that the joint committee should `investigate violations of law and the conduct of any state, county or municipal official or department,c., and report whether the functions of such officials or departments have been or are being lawfully or properly discharged.'
"The principal function of the legislature as a governmental agency of the people is to enact laws. The principal function of the judiciary is to enforce existing laws; and also to investigate through a grand jury alleged violations of law which involve criminality, and, when such investigation discloses the existence of such violations, to punish the guilty party.
"In the present case the questions which were put to Hague at the joint session by Mr. Watson, the counsel of the legislature, *Page 502 
were asked by him, as he stated to a member of the senate at the time they were put to the witness, for the purpose of showing that the profits which had resulted from the criminal conspiracies with relation to the condemnation proceedings, the bus franchises, and the theatre privileges, were deposited in bank by Hague. In other words, that Hague was a party to the criminal conspiracies which resulted in the mulcting of the treasuries of the county of Hudson and city of Jersey City * * *. Manifestly, the questions with relation to the purchases of real estate by Hague were put for the same purpose. The questions were within the scope of the resolution which directed an investigation of violations of law by county or municipal officers; but, as has already been stated, investigations of alleged violations of the criminal law are strictly judicial in their nature, and, under the constitution the legislature has no more power to conduct such investigations than has the governor, who constitutes the third branch of our governmental system, even if the latter desired the information sought for the purpose of advising the legislature with relation to changes in our criminal laws that would make violations thereof by county and municipal officers less likely to occur. In refusing, therefore, to answer these questions, relating as they did to matters, inquiry into which was outside of the jurisdiction of the legislature, Hague was exercising a legal right, and, this being so, the legislature was without power to punish him for such refusal, * * *."
An examination of the Hague Case discloses that the resolution is practically a duplicate of the resolution now before me except that in the present resolution the committee is directed to investigate allegations of fraud and criminality in Hudson county in the gubernatorial election held on November 2d 1937. In the Hague Case the resolution stated that the investigation was made "for the purpose of obtaining the information sought as a basis for such legislative action as the Senate and General Assembly may determine necessary and proper." In the present case the resolution states that the committee shall "report its findings as a basis *Page 503 
for such legislative action as the General Assembly may determine necessary and proper." Notwithstanding said provision in the resolution in the Hague Case, the court of errors and appeals held that the resolution usurped the functions of the judiciary. It is, therefore, evident that the resolution in the case now before me attempts to usurp the functions of the judiciary and is, therefore, unconstitutional and void. Respondent says, however, that either house of the legislature has power to compel the giving of testimony deemed by it relevant to the workings of existing laws. To substantiate this contention respondents' solicitor refers to the result reached by the court of errors and appeals in the first Hague Case, 104 N.J. Eq. 369, which held that the subpoena lawfully required Mayor Hague's attendance before the legislature. The question involved in the first HagueCase is not the question here argued by solicitor of petitioners and does not apply in that respect. Solicitor of respondent further argues that the house of assembly could not investigate an impeachable offense under the contention of the petitioners unless such offense was committed in the presence of a member of the assembly. The resolution here under review was not framed for the purpose of investigating an impeachable offense and this argument, therefore, falls.
Respondent also argues that because two certain supreme court proceedings brought under the present laws were abortive notwithstanding the charge of fraud that, therefore, the house of assembly by its committee should be allowed to investigate the facts and circumstances of the election in order to inform itself what changes should be made in the law. This question is also answered by the opinion in the second Hague Case, supra.
Solicitor of respondents also refers to the case of State v.Brewster, 89 N.J. Law 658. In the Brewster Case the witness refused to appear before the joint appropriation committee of the legislature, and by reason of such refusal, was indicted by the grand jury of Mercer county. The indictment was taken before the supreme court on a writ of certiorari and from there appealed to the court of errors and appeals. The grounds argued for quashing *Page 504 
the indictment were irregularities in procedure by the legislature and do not apply to the case before me. The court of errors and appeals had both the first Hague Case and theBrewster Case before it when the second Hague Case was decided.
Passing to the third point petitioners' solicitor argues that they should be discharged because the resolution upon which jurisdiction is predicated is a nullity and that, therefore, the committing magistrate lacked jurisdiction over the subject-matter. He says that because the general assembly was without power to adopt the resolution the committee is without legal existence and, therefore, was without power to ask the questions of the petitioners. In other words he says the whole proceeding is coram non judice. The writ of habeas corpus is not a corrective remedy. It cannot perform the functions of a writ of error or appeal for the purpose of reviewing mere errors or irregularities in the proceedings of a court having jurisdiction over the person and subject-matter. 12 R.C.L. 1185
§ 8. It was so stated in In re Davis, 107 N.J. Eq. 160.
Respondent argues that the Davis Case applies and that this court could not and should not entertain the writ now before it. The Davis Case holds that habeas corpus is not the proper remedy to review errors and irregularities in judicial proceedings or judgments where the court has jurisdiction over the person and subject-matter under review. Chancellor Walker in writing the opinion said:
"It is true, the defendant is restrained of his liberty, and it may be, that he is improperly restrained. But in this case it is not by force or violence; nor yet by mere pretense or color of law."
In the case before me the adoption of the resolution is not questioned; the appointment of the committee is not questioned; the existence of the statute, under which the warrant for arrest was issued, is not questioned, nor is any irregularity of the proceedings brought before the court for review. The question is, is the resolution void as unconstitutional? The attack, therefore, on the warrant for the arrest of the petitioners is collateral and habeas corpus is a proper remedy. *Page 505 
This is generally true and is generally the only question open for attack. If the proceedings or law, under which the judge or a court may act, are unconstitutional, then a person imprisoned thereby may be discharged from custody on a writ of habeascorpus. 12 R.C.L. 1196 § 17; 29 C.J. 30, 35, 62, 63. See, also,People, ex rel. Tweed v. Liscomb, 60 N.Y. 559; In re Hall,94 N.J. Eq. 108, 113. Also Peltier v. Pennington,14 N.J. Law 312; State v. Osborne, 79 N.J. Eq. 430. It seems to me theHabeas Corpus act provides for an inquiry such as the one now before me. It reads as follows:
"If it appears that the party has been arrested or committed for some criminal offense, or supposed criminal offense, the court, justice or judge may in its or his discretion inquire into the cause and grounds of the confinement or restraint of such party, * * *
"* * * When this course is taken the party shall not be entitled to his discharge by reason of any informality or insufficiency in the original arrest or commitment." (Rev. Stat.1937 2:82-36.)
The Habeas Corpus act also provides that it shall be liberally construed so as to secure as far as possible the liberty of the citizen. See, also, David v. Blundell,39 N.J. Law 612; Ex parte Hague, 104 N.J. Eq. 31. The Blundell Case
was reversed by the court of errors and appeals but did not affect the opinion relative to the matter here involved.
Solicitor of respondent says that the present case is distinguished from the Hague Case in that in the Hague Case
the legislature attempted to hold Mayor Hague for contempt while in the present case the committee complained to a magistrate and the warrant for the arrest for the refusal of the petitioners to answer certain questions was issued by a magistrate and thus committed to jail to await the action of the grand jury. The complaint was made under the statute above referred to. I find no merit in this contention. It makes no difference whether the committee of the legislature attempts to hold a witness for contempt or whether the committee complains to a magistrate or a court that the witness has violated the statute by refusing to answer questions and thereby causes his arrest and commitment to jail. If the *Page 506 
authority under which the committee or the legislature acted is void for the reason that it is unconstitutional the result under attack would be the same.
I have, therefore, reached the conclusion that the matters before me are almost parallel and very similar to the matters before the court of errors and appeals in the second HagueCase. The petitioners were justified in refusing to answer the questions. I, therefore, am compelled to find that the petitioners should be discharged from custody. I will advise orders accordingly.